1   **MAURA J. WOGAN** (admitted *pro hac vice*)
**JEREMY S. GOLDMAN** (admitted *pro hac vice*)
2   **FRANKFURT KURNIT KLEIN & SELZ, P.C.**
488 Madison Avenue, 10th Floor
3   New York, NY 10022
Telephone: (212) 980-0120
4   Facsimile: (212) 593-9175
E-Mail:  mwogan@fkks.com
5            jgoldman@fkks.com

6   **MICHAEL E. WEINSTEN (SBN 155680)**
**DANIEL GUTENPLAN (SBN 260412)**
7   **LAVELY & SINGER**
**PROFESSIONAL CORPORATION**
8   2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
9   Telephone: (310) 556-3501
Facsimile: (310) 556-3615
10  E-Mail:  mweinsten@lavelysinger.com
11           dgutenplan@lavelysinger.com

12  Attorneys for Plaintiffs HASBRO, INC.
and WIZARDS OF THE COAST LLC
13

14              **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16  HASBRO, INC., a Rhode Island            ) Case No.: CV 13-03406-DMG (JCG)
corporation; and WIZARDS OF THE         )
17  COAST LLC, a Delaware limited          ) [HON. DOLLY M. GEE]
liability company,                      )
18                                          ) **PLAINTIFFS' MEMORANDUM OF**
                Plaintiffs,              ) **POINTS AND AUTHORITIES IN**
19                                          ) **OPPOSITION TO DEFENDANTS'**
        vs.                             ) **MOTION FOR SUMMARY**
20                                          ) **JUDGMENT AND/OR PARTIAL**
SWEETPEA ENTERTAINMENT, INC.,           ) **SUMMARY JUDGMENT**
21  a Delaware corporation; and            )
SWEETPEA B.V.I. LTD., a British         ) Date:       August 9, 2013
22  Virgin Islands corporation,            ) Time:       2:00 p.m.
                                        ) Courtroom: 7
23              Defendants.              )
                                        )
24                                          ) Complaint Filed: May 13, 2013
                                        )
25  _____ )

26

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    STATEMENT OF FACTS .............................................................................. 4

    A.    The License Agreement ....................................................................... 4

    B.    The 1998 Action .................................................................................. 5

    C.    The First and Second Amendments ..................................................... 5

    D.    The Initial Picture and the SyFy Television Movies........................... 6

    E.    The Reversion of the Sequel Rights .................................................... 6

    F.    The Competing WB and Universal *D&D* Motion Pictures ............... 6

    G.    The Instant Lawsuit ............................................................................. 7

III.   LEGAL STANDARD ..................................................................................... 8

IV.    ARGUMENT.................................................................................................... 8

    A.    Reversion of the Sequel Rights Is Not Conditioned On Any Notice
        and Cure Requirement......................................................................... 8

        1.    Paragraph 15 Does Not Preclude Reversion of the Sequel
             Rights ........................................................................................ 9

        2.    Paragraph 19 Does Not Preclude Reversion of the Sequel
             Rights ...................................................................................... 11

    B.    The *Chainmail* Script Infringes Hasbro's Copyright................................ 12

        1.    Hasbro Has Stated a Claim for Copyright Infringement ................ 12

        2.    Hasbro's Evidence Raises a Genuine Issue of Material Fact on
             Its Claim for Copyright Infringement...................................... 13

    C.    Hasbro's Trademark Claims Are Ripe ...................................................... 17

        1.    Sweetpea Used the *D&D* Trademark for Promotional Purposes ....... 18

        2.    Sweetpea's Use of the *D&D* Trademark is Likely to Confuse
             Consumers............................................................................... 19

    D.    There is a Case or Controversy Warranting Declaratory Relief ................. 20

    E.    In The Alternative, The Court Should Allow Plaintiffs To Obtain
        Discovery.......................................................................................... 22

CONCLUSION ....................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AARP v. 200 Kelsey Associates, LLC,*
No. 06 Civ. 81, 2009 WL 47499 (S.D.N.Y. Jan. 8, 2009) ....................................18, 22

*Acad. of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.,*
944 F.2d 1446 (9th Cir. 1991) .......................................................................19, 2

*Aluminium v. Hunter Engineering Co., Inc.,*
655 F.22 938 (9th Cir. 1981) ....................................................................................20

*Ameron Int'l Corp. v. Cont'l Nat. Am. Grp.,*
No. 11 Civ. 6879, 2011 WL 5873024 (C.D. Cal. Nov. 23, 2011)...............................22

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)..................................................................................................8

*Anderson v. Stallone,*
No. No. 87-0592, 1989 WL 206431 (C.D. Cal.1989) ...............................................14

*Bernal v. Paradigm Talent & Literary Agency,*
788 F. Supp. 2d 1043 (C.D. Cal. 2010) ....................................................................13

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.,*
174 F.3d 1036 (9th Cir.1999) ...................................................................................17

*Burlington Northern Santa Fe. R. Co v. Assinibonie and Sioux Tribes of Fort Peck Reservation,*
323 F.3d 767 (9th Cir. 2003) ....................................................................................22

*Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.,*
150 F.3d 132 (2d Cir. 1998) .....................................................................................16

*Cavalier v. Random House, Inc.,*
297 F.3d 815 (9th Cir. 2002) ....................................................................................14

*Chesebrough-Pond's, Inc. v. Faberge, Inc.,*
666 F.2d 393 (9th Cir. 1982) ....................................................................................21

*DC Comics v. Towle,*
No. 11 Civ. 3934, 2013 WL 541430 (C.D. Cal. Feb. 7, 2013) ..................................14

*Fairbank v. Wunderman Cato Johnson,*
212 F.3d 528 (9th Cir. 2000) ......................................................................................8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
499 U.S. 340 (1991)..................................................................................................13

*Fleischmann Distilling Corp. v. Maier Brewing Co.,*
314 F.2d 149 (9th Cir. 1963) ....................................................................................19

*Fly, Inc. v. Dollar Park & Fly, Inc.,*
782 F.2d 1508 (9th Cir. 1986) ..................................................................................20

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
  547 F.3d 1213 (9th Cir. 2008) ........................................................ 11, 14

*Hardware Mut. Ins. Co. v. Dunwoody*,
  194 F.2d 666 (9th Cir. 1952) ................................................................ 10

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
  676 F.3d 841 (9th Cir. 2012) ................................................... 12, 13, 14

*Levi Strauss & Co. v. Shilon*,
  121 F.3d 1309 (9th Cir. 1997) ............................................................... 18

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) ............................................................... 14

*Medimmune v. Genetech, Inc.*,
  549 U.S. 118 (2007).............................................................................. 20

*Metabolife Intern. Inc. v. Wornick*,
  264 F.3d 832 (9th Cir. 2001) ................................................................ 22

*Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Corp.*,
  900 F. Supp. 1287 (C.D.Cal. 1995) ...................................................... 14

*Micro Star v. Formgen Inc.*,
  154 F.3d 1107 (9th Cir. 1998) ............................................................... 14

*Nat'l Lampoon, Inc. v. Am. Broad. Cos., Inc.*,
  376 F. Supp. 733 (S.D.N.Y. 1974) *aff'd*, 497 F.2d 1343 (2d Cir. 1974) ................... 20

*New Line Cinema Corp. v. Russ Berrie & Co., Inc.*,
  161 F. Supp. 2d 293 (S.D.N.Y. 2001) ................................................... 14

*NTN Communications v. Interactive Network, Inc.*,
  No. 94 Civ. 20777, 1995 WL 569419 (N.D. Cal. Aug. 17, 1995) ............... 19

*Panavision Int'l, L.P. v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998) ............................................................... 17

*Paramount Pictures Corp. v. Carol Pub. Grp.*,
  11 F. Supp. 2d 329 (S.D.N.Y. 1998), *aff'd sub nom*,
  181 F.3d 83 (2d Cir. 1999) ................................................................... 16

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
  167 F. Supp. 2d 1114 (C.D. Cal. 2001) ........................................... 12, 13

*Rearden LLC v. Rearden Commerce, Inc.*,
  683 F.3d 1190 (9th Cir. 2012) ............................................................... 17

*Rhoades v. Avon Prod.*,
  504 F.3d 1151 (9th Cir. 2007) ............................................................... 21

*Rice v. Fox Broad. Co.*,
  330 F.3d 1170 (9th Cir. 2003) ......................................................... 14, 15

*Schloss v. Sweeney*,
  515 F. Supp. 2d 1068 (N.D. Cal. 2007) ................................................ 21

*Shaw v. Lindheim,*
    919 F.2d 1353 (9th Cir. 1990) ................................................................. 14, 15

*Sobini Films v. Tri-Star Pictures, Inc.,*
    No. 01 Civ. 6615, 2001 WL 1824039 (C.D. Cal. Nov. 21, 2001) ................................ 19

*Sweedlow, Inc. v. Rohm & Haas Co.,*
    455 F.2d 884 (9th Cir. 2009) ................................................................. 18, 21

*Three Boys Music Corp. v. Bolton,*
    212 F.3d 477 (9th Cir. 2000) ................................................................. 13

*Twentieth Century-Fox Film Corp. v. MCA, Inc.,*
    715 F.2d 1327 (9th Cir. 1983) ................................................................ 16

*Walt Disney Prods. v. Air Pirates,*
    581 F.2d 751 (9th Cir. 1978) ................................................................. 14

*Warner Bros. Entm't Inc. v. RDR Books,*
    575 F. Supp. 2d 513 (S.D.N.Y. 2008) ........................................................ 15, 16

*Young v. Vannerson,*
    612 F. Supp. 2d 829 (S.D. Tex. 2009) ...................................................... 18, 21

**STATUTES**

15 U.S.C. § 1114(a) ............................................................................ 17

15 U.S.C. § 1125(a) ............................................................................ 17

15 U.S.C. § 1125(c) ............................................................................ 17

17 U.S.C. § 101 ............................................................................... 17

17 U.S.C. § 106 ............................................................................ 12, 17

28 U.S.C. § 2201 .............................................................................. 20

**OTHER AUTHORITIES**

11 *Moore's Federal Practice* § 56.100[1] ...................................................... 8

Fed. R. Civ. P. 26(f) ...................................................................... 23, 24

Fed. R. Civ. P. 56 ......................................................................... 8, 22

Art. III of the U.S. Constitution .............................................................. 20

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Hasbro, Inc. and Wizards of the Coast LLC (together, "Hasbro") submit this memorandum of points and authorities in opposition to the Motion for Summary Judgment and/or Partial Summary Judgment (the "Motion") of Defendants Sweetpea B.V.I. Ltd. and Sweetpea Entertainment, Inc. (together, "Sweetpea"). For the reasons set forth herein, the Court should deny Sweetpea's Motion.

## I.   INTRODUCTION

Hasbro owns the rights (including copyrights and trademarks) in and to the *Dungeons & Dragons* ("*D&D*") property (the "Property"). Pursuant to a license agreement between Hasbro and Sweetpea (the "Agreement"),[1] Sweetpea was granted, among other things, the right to produce and distribute one theatrical or television motion picture based on the Property (the "Picture"). Sweetpea exploited those rights, and the initial Picture was released in theaters in December 2000.

The Agreement also granted Sweetpea rights to produce theatrical and non-theatrical motion picture sequels, prequels and remakes based on the Property and the Picture (the "Sequel Rights"). Those Sequel Rights automatically reverted to Hasbro when Sweetpea failed to exploit those rights by producing a theatrical or non-theatrical motion picture within the time required by the Agreement.

In the Spring of 2013, Hasbro learned that, despite the fact that Sweetpea no longer held the Sequel Rights, Sweetpea had authorized Warner Bros. Pictures ("WB") to develop and produce, and was actively working with WB to develop and produce, a major motion picture using the *D&D* trademark (the "*D&D* Trademark") and based on a script entitled *Chainmail* (the "Infringing Motion Picture"). The *Chainmail* script contains numerous protected characters, settings, back stories and other elements that are

---

[1] The Agreement comprises the License Agreement effective as of September 1, 1994 (the "License Agreement") and its amendments dated March 19, 1998 (the "First Amendment") and June 8, 1998 (the "Second Amendment"), attached as Exhibits A, F and G, respectively, to the Declaration of Lee N. Rosenbaum ("Rosenbaum Decl.").

protected by Hasbro's copyrights and trademarks in the Property (the "Infringing Elements").

Hasbro's counsel sent Sweetpea a letter notifying it that the Sequel Rights had reverted and demanding that Sweetpea cease and desist from any further development of the Infringing Motion Picture.  In response, Sweetpea's counsel claimed that the Sequel Rights had not reverted, confirmed that Sweetpea had an agreement with WB to produce a *D&D* film, and warned Hasbro that Sweetpea would sue Hasbro if it continued to "interfere" with Sweetpea's "rights."  Seven days later, an announcement appeared in the trade press that WB had acquired the rights to make a *D&D* motion picture based on *Chainmail*.  Thus, Hasbro brought this action for copyright infringement, trademark infringement and a declaratory judgment that the Sequel Rights had reverted to Hasbro.

Sweetpea's response to this lawsuit has been a classic "hide the ball" defense.  Instead of answering the Complaint, filing a motion to dismiss or permitting Hasbro to conduct *any* discovery, Sweetpea filed the instant Motion for Summary Judgment.  In its Motion, Sweetpea does not deny that it is actively developing the Infringing Motion Picture based on *Chainmail* or that it is using the *D&D* Trademark to promote the Infringing Motion Picture.  Instead, Sweetpea argues that (i) the Sequel Rights did not revert because Hasbro failed to comply with notice and cure provisions contained in the Agreement; (ii) Hasbro cannot establish its claims for copyright or trademark infringement; and (iii) Hasbro's claim for declaratory relief is not justiciable because there is no "case or controversy."

Sweetpea's arguments are meritless and its Motion is wildly premature.  *First*, as expressed by the plain language of the Agreement, the notice and cure provisions upon which Sweetpea bases its Motion would apply only if Hasbro were seeking to *terminate* the Agreement based on either Sweetpea's failure to commence principal photography of the initial *Picture* or in the event of a default or breach of the Agreement.  However, Hasbro does not base its reversion claim on Sweetpea's failure to commence production of the Picture (an event which occurred over 12 years ago) or on a breach or default of

the Agreement.  Rather, the Sequel Rights have reverted by operation of a separate, independent and *automatic* reversion clause – one that is neither expressly nor impliedly subject to any notice and cure provision:  "These rights *shall revert* on a rolling basis . . . to [Hasbro] on the earlier of (i) five (5) years from [] the initial U.S. release or (ii) seven (7) years from the final director's cut of the immediately prior picture."  The Court should reject Sweetpea's effort to engraft a notice and cure condition onto this reversion clause where none exists.  Moreover, even if the Agreement were ambiguous on this issue, the Declaration of Lee N. Rosenbaum (the "Rosenbaum Decl."), the attorney for Hasbro's predecessor-in-interest who negotiated and drafted the relevant provisions at issue, confirms that the reversion of the Sequel Rights was always intended to be automatic and not conditioned on any notice and cure requirement.

*Second*, Hasbro's allegations in the Complaint – that Sweetpea is actively developing and producing the Infringing Motion Picture based on *Chainmail* and using the *D&D* Trademark – state claims for copyright and trademark infringement.  Moreover, the evidence submitted by Hasbro on this Motion, including Sweetpea's admissions that it authorized WB to exploit the Sequel Rights and that the Infringing Motion Picture is in "advanced stages of development," are sufficient evidence for this Court to deny Sweetpea's Motion.  As demonstrated in the Declaration of James Wyatt (the "Wyatt Decl."), the Creative Manager for *D&D*, the breathtaking volume of Infringing Elements in the *Chainmail* script establishes, at minimum, an issue of fact as to whether the script is substantially similar to the Property.  Sweetpea's actual use and stated intent to use the *D&D* Trademark is enough to show trademark infringement.

*Finally*, this case exemplifies the circumstances under which a declaratory judgment is appropriate.  As explained in the Declaration of Michael Eisner (the "Eisner Decl."), Senior Vice President, Business & Legal Affairs for Hasbro Studios, Hasbro and Sweetpea both claim ownership in the same intellectual property rights.  Both have deals with a major motion picture studio to produce a film based on the same Property.  Sweetpea threatened to sue Hasbro if it attempted to interfere with Sweetpea's rights.

There is no question that there is a "case or controversy" between the parties and the Court may issue a declaration that Hasbro, not Sweetpea, owns the Sequel Rights.

For these reasons, further discussed below and in the accompanying declarations, Sweetpea's Motion should be denied.

## II.   STATEMENT OF FACTS

*Dungeons & Dragons* is one of the most famous and commercially-successful games in the world.  Wyatt Decl. ¶ 29.  Over *D&D*'s 40-year history, Hasbro and its predecessor-in-interest TSR, Inc. ("TSR") created the Property, which includes hundreds of books, articles, compendia and magazines containing content for use in the game.  *Id.* ¶¶ 6-9.  This intellectual property includes distinct and detailed literary descriptions and graphic depictions of fictional places, characters, weapons, creatures, magic items, spells, interrelated settings, plots, foes, allies, quests and treasures that players can incorporate in their own games.  *Id.*  Hasbro has registered the copyrights in the materials and the trademarks that comprise the Property.  *Id.* ¶¶ 3, 30-31.

### A.   The License Agreement

A License Agreement between TSR and Sweetpea went into effect on or about September 1, 1994.  Compl. ¶ 24.  In the License Agreement, Sweetpea was granted the right to produce and exploit "one (1) theatrical or television motion picture based . . . upon the Property . . . .".  Rosenbaum Decl., Ex. A-23 ¶ 2.  The License Agreement did not contain an outright grant of the Sequel Rights (the right to produce theatrical and non-theatrical motion picture sequels, prequels and remakes based on the Property and the Picture) or rights to produce television series and television motion pictures based on the Property and the Picture ("Television Rights").  Instead, such subsequent production rights were subject to future negotiation and agreement by the parties on all material terms.  *Id.*, Ex. A-27-28 ¶ 2(k).

Paragraph 15 of the License Agreement provided that, in the event that Sweetpea had not commenced principal photography of the *initial* Picture within three years of the License Agreement's effective date, TSR would have the right to terminate the License

Agreement, and *all* rights granted thereunder would revert to TSR.  *Id.*, Ex. A-59 ¶ 15.
The termination right found in Paragraph 15 was subject to a specific notice and cure
provision.  *Neither Paragraph 15 nor any other provision of the License Agreement
addressed, explicitly or otherwise, the reversion of the Sequel Rights or Television
Rights*.  Again, any such reversion provision, like all the material terms related to
subsequent productions, would have to be negotiated and agreed upon at a later date.  *Id*.

### B.     The 1998 Action

On October 1, 1997, TSR sent Sweetpea a written termination notice pursuant to
Paragraph 15 based on TSR's belief that Sweetpea had not commenced principal
photography of the initial Picture within the 3-year limit provided under the License
Agreement.  *Id.*, Ex. B.  Although, in response, Sweetpea claimed that principal
photography had commenced, TSR believed that the "photography" shot by Sweetpea
was not footage intended for a genuine motion picture, but was footage that Sweetpea
cobbled together at the eleventh hour for the sole purpose of preventing the reversion of
its rights under the License Agreement.  *Id.* ¶ 12.  On February 20, 1998, TSR
commenced an action against Sweetpea in the Superior Court for the County of Los
Angeles seeking a declaration that the License Agreement had been properly terminated
by TSR (the "1998 Action").  The 1998 Action was removed this Court.  *Id.*, Ex. C

### C.     The First and Second Amendments

On March 19, 1998, as part of a settlement of the 1998 Action, the parties entered
into the First Amendment.  *Id.*, Ex. F.  Sweetpea, for the first time, was given an outright
grant of rights to produce subsequent productions based on the Picture.  In doing so, the
First Amendment divided Sweetpea's rights into three separate "rights buckets": (i) the
rights relating to the Picture, *id.*, ¶¶ 1-5; (ii) the Sequel Rights, *id.*, ¶¶ 6-9; and (iii) the
Television Rights, *id.*, ¶¶ 10-13.

Each rights bucket is subject to its own financial terms and, most critically, a
separate and independent reversion clause.  While the termination of the entire
Agreement and the reversion of the rights relating to the initial Picture were made

---

"subject to the cure period in Paragraph 15 of the [License] Agreement," *id.*, ¶ 1, the provision governing the reversion of the Sequel Rights contains no language conditioning the reversion of those rights upon a notice and cure provision, *id.*, ¶ 6.  Rather, the Sequel Rights would revert automatically in the event that Sweetpea failed to act within the specified time frame.  *Id.* ("These rights *shall revert*. . .") (emphasis added).

## D.   The Initial Picture and the SyFy Television Movies

On December 8, 2000, the Picture, entitled *Dungeons & Dragons*, was released in theaters in the United States.  Compl. ¶ 9.  On October 8, 2005, a television motion picture entitled *Wrath of the Dragon God* premiered in the United States on Syfy (f/k/a Sci-Fi Channel).  *Id.* ¶ 44.  On or about November 24, 2010, a second television motion picture entitled *The Book of Vile Darkness* premiered in the United States on SyFy.  *Id.* ¶ 49.  In connection with *The Book of Vile Darkness*, Sweetpea paid, and Hasbro accepted, an amount of $20,000 for Sweetpea's exercise of its Television Rights pursuant to Paragraph 11 of the First Amendment.  *Id.* ¶ 47; Rosenbaum Decl., Ex. F ¶ 11.

## E.   The Reversion of the Sequel Rights

At no time did Sweetpea produce a theatrical or non-theatrical motion picture based on the Property and the Picture.  Compl. ¶ 52.  Thus, by virtue of the reversion provision contained in Paragraph 6 of the First Amendment, the Sequel Rights reverted to Hasbro on December 8, 2005 or, at the latest, October 8, 2010, when Sweetpea failed to exercise its Sequel Rights within the agreed-upon time limit.  *Id.* ¶ 53.

## F.   The Competing WB and Universal *D&D* Motion Pictures

In or about October 2012, WB approached Hasbro to obtain the rights necessary to produce a *D&D* movie based on the *Chainmail* script.  Eisner Decl. ¶ 4.  *Chainmail* copies and incorporates numerous fully-developed protected elements from the Property, including characters, plot lines, back stories, settings, weapons, monsters and spells.  *See generally* Wyatt Decl.; *id.*, Exs. A (*Chainmail* script) and B (Chart of Infringing Elements).  Although Hasbro was unable to reach an agreement with WB, it later agreed to grant Universal Pictures ("Universal") certain rights to produce and exploit a theatrical

motion picture based on the Property. Eisner Decl. ¶ 5. However, in early 2013, Hasbro learned, through Universal, that Sweetpea was negotiating an agreement with WB purporting to grant WB rights to develop and produce a *D&D* movie based on *Chainmail*. *Id.* ¶ 6.

On April 30, 2013, Hasbro's counsel sent to Sweetpea a letter (the "Hasbro Cease and Desist Letter") demanding that Sweetpea acknowledge the reversion of the Sequel Rights to Hasbro and inform WB that all further development of the Infringing Motion Picture must cease. *Id.* ¶ 8. Counsel for Sweetpea responded, by letter dated May 2, 2013, stating that Hasbro was "attempting to interfere with [Sweetpea's] contractual relations with Warner Brothers" and that Sweetpea would "use all available legal avenues to hold [Hasbro] responsible for any damage it may cause to the contractual relationship with Warner Brothers." *Id.* ¶ 9.

On May 7, 2013, *Deadline Hollywood* reported that "Warner Brothers ha[d] acquired the rights to make a movie based on *Dungeons & Dragons*" and that the "studio is actually quite far along in the development of the project." *Id.* ¶ 11. The following day, the Internet Movie Database reported a *Dungeons & Dragons* project was "in development" with WB, that David Johnson was involved as writer, and Courtney Solomon was a producer. *Id.* ¶ 12. On May 14, 2013, the very next day after Hasbro filed the Complaint in this action, Sweetpea issued a press release, quoted by *Deadline Hollywood*, that "[Sweetpea has] made three pictures so far, and we're going to make more – including the tentpole project that is currently in *advanced stages of development* with Warner Bros." *Id.* at ¶ 14 (emphasis added).

## G. The Instant Lawsuit

On May 13, 2013, Hasbro filed the Complaint in this action seeking a declaratory judgment that the Sequel Rights had reverted to Hasbro and alleging claims for copyright and trademark infringement. Sweetpea neither answered nor moved to dismiss the Complaint. Instead, Sweetpea filed the instant Motion without denying any of Hasbro's allegations and before Hasbro had the opportunity to conduct any discovery.

## III.   LEGAL STANDARD

On a motion for summary judgment, the movant must show the absence of any genuine issue of material fact.  Fed. R. Civ. P. 56; *see Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986)).  The substantive law at issue in the suit determines whether a fact is material; "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Virtually all courts, including the Ninth Circuit, strongly disfavor summary judgment motions brought at the outset of litigation before the start of discovery.  "[P]re-discovery summary judgments should be rare.  It is well established that courts should not grant summary judgment against parties who have not yet had reasonable opportunity to gather the evidence necessary to oppose the motion."  11 *Moore's Federal Practice* § 56.100[1] (Matthew Bender 3d ed.) (collecting cases from every United States Court of Appeal).[2]

## IV.   ARGUMENT

### A.   Reversion of the Sequel Rights Is Not Conditioned On Any Notice and Cure Requirement

Sweetpea argues that the reversion of the Sequel Rights is conditioned upon notice and cure provisions contained in Paragraphs 15 and 19 of the original License Agreement.  Mot. at 7.  Sweetpea's argument misconstrues the basis for Hasbro's claim that the Sequel Rights have reverted and is contradicted by the plain language of the Agreement.

---

[2] Plaintiffs argue, in the alternative, that this Motion should be dismissed, pursuant to Federal Rule 56(d), because they are entitled to discovery of controverting evidence in Sweetpea's possession.  *See infra* Point IV. E.

1   Hasbro's claim that the Sequel Rights have reverted is based upon Paragraph 6 of
2   the First Amendment, which provides that the Sequel Rights "*shall revert* on a rolling
3   basis . . . to TSR on the earlier of (i) five years from [] the initial U.S. release or (ii) seven
4   (7) years from [the] final director's cut of the immediately prior picture."  Rosenbaum
5   Decl., Ex. F ¶ 6 (emphasis added).  Hasbro alleges that the Sequel Rights automatically
6   reverted to Hasbro because Sweetpea failed to exercise those rights within the specified
7   time period. *See* Compl. ¶ 53.  At this time, Hasbro does not allege that the Agreement
8   has terminated, or that Sweetpea has breached the Agreement.

9   ### 1.   Paragraph 15 Does Not Preclude Reversion of the Sequel Rights

10   Contrary to Sweetpea's suggestion, Hasbro is not attempting "to terminate the
11   Agreement" pursuant to Paragraph 15 of the License Agreement.  Mot. at 7.  Indeed, that
12   would be impossible.  By its own terms, Paragraph 15 governed only Hasbro's right to
13   elect to terminate the entire Agreement, and to cause the reversion of all rights granted
14   thereunder, "[i]n the event that a motion picture or television production (i.e., principal
15   photography) based on the Property has not commenced within three (3) years "from the
16   License Agreement's effective date."  *Id*., Ex. A ¶ 15.  Thus, Paragraph 15's requirement
17   that Hasbro provide "written notice," and that Sweetpea be given 60 days thereafter to
18   cure, applied only if Sweetpea had failed to begin production of the initial Picture
19   contemplated by the License Agreement within three years of September 1, 1994 – the
20   date the License Agreement went into effect.  Hasbro's right to terminate the Agreement
21   pursuant to Paragraph 15 was mooted over twelve years ago by Sweetpea's production
22   and exploitation of the Picture.[3]

23   Sweetpea's attempt to engraft the notice and cure requirement of Paragraph 15 as a
24   condition of the reversion of Sequel Rights is further belied by the language and structure
25   of the First Amendment.  Prior to entering into the First Amendment, the parties had not

---

26
27   [3] In fact, in the Second Amendment, the parties eliminated the notice and cure
     requirement, even with respect to the reversion of the Picture rights.  Rosenbaum Decl.,
28   Ex. G ¶ 7.

agreed to any specific terms that would govern subsequent productions based on the initial Picture.  Rather, the License Agreement merely provided that the parties would negotiate and agree to any such terms in the future pursuant to Sweetpea's "Right of First Refusal/Last Negotiation."  *See id.*, Ex. A at A-22 ¶ 2(k); *see also id*. ¶ 7.

In the First Amendment, Sweeatpea's rights were divided into the three rights buckets – the Picture rights, the Sequel Rights and the Television Rights – with each bucket subject to its own terms and reversion clause.  Specifically, the reversion of Sweetpea's rights to produce the initial Picture was expressly made "subject to the cure period stated in Paragraph 15 of the Agreement[.]"  *Id*. ¶ 1.  The provision governing the reversion of the Sequel Rights, however, omits any language conditioning expressly the reversion of those rights upon a notice and cure provision.  In fact, the provision states that the Sequel Rights "shall revert" in the event that Sweetpea fails to act within the specified time frame.  *Id*. ¶ 6.  The provision governing the reversion of the Television Rights similarly provides that the rights "shall revert" if there is no television series or motion picture within 5 years of the last production.  *Id*. ¶ 12

The parties, thus, knew how to condition the reversion of rights on "the cure period stated in Paragraph 15 of the Agreement."  They did so in Paragraph 1 of the First Amendment (related to the termination of the Agreement and reversion of all rights granted to Sweetpea).  But they did not do so in Paragraphs 6 or 12 (related to the reversion of Sequel Rights and Television Rights).  Interpreting the Agreement to impose a notice and cure requirement as a condition to the reversion of the Sequel Rights and Television Rights where none exists "runs counter to that time-worn but sound principle of legal construction, be it statutory or contractual: Expressio unius est exclusio alterius" – the expression of one thing is the exclusion of another.  *Hardware Mut. Ins. Co. v. Dunwoody*, 194 F.2d 666, 668 (9th Cir. 1952).

To the extent this Court determines that the Agreement is "reasonably susceptible" to Sweetpea's proffered interpretation (it is not), the negotiation and drafting history surrounding the First and Second Amendments to the License Agreement foreclose any

argument that the parties somehow intended to subject the reversion of Sequel Rights to the notice and cure provision of Paragraph 15.  *See Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1223 (9th Cir. 2008).  Specifically, the Rosenbaum Declaration sets forth detailed testimony and contemporaneous correspondence demonstrating that the parties always intended that the Sequel Rights and Television Rights would revert automatically in the event that Sweetpea failed to exploit those rights within a definite time period.  *See generally* Rosenbaum Decl.

### 2.      Paragraph 19 Does Not Preclude Reversion of the Sequel Rights

Sweetpea also contends that Paragraph 19(b) of the License Agreement contains a "general notice-and-cure provision that provides that a party's act or omission cannot be deemed a default or breach unless the party receives proper written notice [and an opportunity to cure such default]."  Mot. at 7.  However, at this time, Hasbro is not claiming that the Sequel Rights have reverted because of an event of default or breach of the Agreement.  Nor is Hasbro taking the position that the Sequel Rights have reverted because the Agreement was terminated.  Rather, as explained above, Hasbro is asserting only that the Sequel Rights have reverted by operation of the automatic reversion clause contained in Paragraph 6 of the First Amendment.  Accordingly, the provisions of Paragraph 19(b) requiring notice and an opportunity to cure are inapplicable.

Similarly, Sweetpea's argument that Paragraph 19(c) requires Hasbro to give Sweetpea "an opportunity to cure any 'unauthorized use' of the *D&D* Property within 20 business days of receiving notice of default or breach," Mot. at 7-8, also fails.  Paragraph 19(c) defines "an unauthorized exploitation by [Sweetpea] of any of the rights expressly reserved to [Hasbro]" as a "Termination Default" and provides for notice and a 20-business day cure period before such event will be "deemed to be a Termination Default."  Again, Hasbro is not alleging, at this time, that the Agreement is subject to termination because of Sweetpea's "unauthorized use" of any reserved rights.  Rather, Hasbro is asserting that the Sequel Rights automatically reverted based on a failure by Sweetpea to use or exploit such rights in the time period required by the Agreement.

### B.     The *Chainmail* Script Infringes Hasbro's Copyright

To establish copyright infringement, Hasbro must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

In its Motion, Sweetpea does not challenge Hasbro's ownership of valid copyrights in and to the Property.  Instead, Sweetpea argues (erroneously) that "Hasbro has not even alleged, much less come forward with admissible evidence, that any element in any of its copyrighted works is also present in any allegedly infringing work by Sweetpea."  Mot. at 9.  Sweetpea is mistaken.

### 1.     Hasbro Has Stated a Claim for Copyright Infringement

The Complaint alleges that Sweetpea is "actively working with [WB] to produce a *Dungeons & Dragons* movie . . . *using a script entitled Chainmail that is based upon, and contains many protected elements from, the Property.*"  Compl. ¶ 4 (emphasis added).  Hasbro alleges that Sweetpea licensed the Sequel Rights to WB, which "is actually quite far along with the development of the project, as it will use [the *Chainmail* script]".  *Id.* ¶ 59.  These allegations more than suffice to state a claim for copyright infringement.[4]  *See Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001) ("Copyright claims need not be pled with particularity. . . . The question [] boils down to whether or not [defendant] has fair notice of the allegations against it.").  Hasbro's claims are sufficient to put Sweetpea on notice of the nature and source of Hasbro's claim, which is all that is needed at the pleading stage.  *Id.* at 1121. "Further details can be elicited during the discovery stage."  *Id.*

Sweetpea's argument that Hasbro has failed to "come forward with admissible evidence" of copyright infringement is disingenuous.  Hasbro's copyright infringement

---

[4] Even if Sweetpea did not itself prepare the *Chainmail* script, by licensing to WB the right to develop that infringing script, Sweetpea violated Hasbro's exclusive right "to authorize" the development of a motion picture based on the *D&D* Property. 17 U.S.C. § 106.

claim is based upon Sweetpea's own admissions that it and WB are actively developing and producing a *D&D* film using the *Chainmail* script.  By neglecting to answer the Complaint and moving for summary judgment before discovery, Sweetpea is attempting to block Hasbro's right and ability to discover the full extent of Sweetpea's development activities and acts of copyright infringement.  *See infra* Point IV.E.

### 2. Hasbro's Evidence Raises a Genuine Issue of Material Fact on Its Claim for Copyright Infringement

Copying is established by showing "(1) that the defendant had access to the plaintiff's work and (2) that the two works are substantially similar."  *L.A. Printex*, 676 F.3d at 846.

#### (a)   Access

Where the similarities between two works are so "strikingly similar" that, "as a matter of logic, the only explanation for the similarities between the two works must be copying rather than coincidence, independent creation or prior common source," no further proof of access is required.  *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1052 (C.D. Cal. 2010) (quotation marks, brackets and ellipses omitted).  Here, as discussed below, the volume of Infringing Elements that are contained in the *Chainmail* script and identified by name meets the striking similarity test.  Moreover, given the "widespread dissemination" of *D&D*, access to the Property must be presumed.  *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000); Wyatt Decl. ¶¶ 6 & 29.

#### (b)   Substantial Similarity

The test for infringement is whether there is "copying of constituent elements of the work that are original."  *Feist*, 599 U.S. at 361.  Courts in the Ninth Circuit apply an "extrinsic" and "intrinsic" test to determine whether two works are substantially similar.  *See Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).  "[T]he extrinsic test considers the objective expressive similarities in two works and leaves the subjective evaluation of such similarities to the intrinsic test."  *L.A. Printex*, 676 F.3d at 848.  When

opposing a motion for summary judgment, a copyright plaintiff need only demonstrate an issue of fact under the extrinsic test.  *See Shaw v. Lindheim*, 919 F.2d 1353, 1361 (9th Cir. 1990).  "Substantial similarity is usually an extremely close issue of fact and summary judgment has been disfavored in cases involving intellectual property." *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir. 1984).

Here, Hasbro's claim of substantial similarity is based on the numerous copyright-protected elements, including highly-delineated characters, monsters, settings, artifacts, weapons and other objects from the Property, that are contained in *Chainmail*.

In the Ninth Circuit, characters that are "especially distinctive" or are the "story being told" have been held to be "sufficiently delineated to warrant copyright protection." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1175 (9th Cir. 2003); *see Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 755 (9th Cir. 1978) (fictional characters with "physical as well as conceptual qualities" are "more likely to contain some unique elements of expression").  These characters generally display "consistent, widely identifiable traits." *Id.  See, e.g., Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Corp.*, 900 F. Supp. 1287, 1297 (C.D.Cal. 1995) (James Bond); *Anderson v. Stallone*, No. No. 87-0592, 1989 WL 206431, at *7 (C.D. Cal.1989) (Rocky Balboa).

Copyright protection has been afforded not only to "living" characters, but also to a variety of other imaginary objects, including cars, weapons and gaming maps.  *See DC Comics v. Towle*, No. 11 Civ. 3934, 2013 WL 541430 (C.D. Cal. Feb. 7, 2013) (Batmobile); *Halicki Films*, 547 F.3d at 1224 ("Eleanor" car from *Gone in 60 Seconds*); *New Line Cinema Corp. v. Russ Berrie & Co., Inc.*, 161 F. Supp. 2d 293, 302 (S.D.N.Y. 2001) (Freddy's glove from *Nightmare on Elm Street*); *Micro Star v. Formgen Inc.*, 154 F.3d 1107 (9th Cir. 1998) (user-generated "levels" for video game).  These "invented facts constitute creative expression protected by copyright because 'characters and events spring from the imagination of [the original] authors.'" *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 536 (S.D.N.Y. 2008) (quoting *Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 139 (2d Cir. 1998)).

1    Using names and titles from copyright-protected materials, though not

2    infringement in and of itself, is nevertheless highly probative of substantial similarity.

3    *See* Nimmer § 2.12 at 2-178.30 (copying character names "is a factor to be considered in

4    determining whether the character as appropriated is sufficiently distinctive to constitute

5    an infringement"); *Shaw*, 919 F.2d at 1362 ("If the copying of a title is not an act of

6    copyright infringement, it may . . . have copyright significance as one factor in

7    establishing whether the substance of plaintiff's work (not the title) has been copied.")

8    (citations omitted).

9    *Chainmail*, which is being developed and marketed using the title *Dungeons &*

10   *Dragons*, contains numerous Infringing Elements, identified by name, copied directly

11   from the Property.  *See generally* Wyatt Decl.; *id.*, Ex. B.  Among other substantial

12   similarities, the lead antagonist of *Chainmail*                REDACTED

13                                                                                    Wyatt

14   Decl. ¶ 14.  The script tells the story of              REDACTED

15                                                                        *Id.* ¶ 13.   REDACT

16

17

18               *Id.* ¶¶ 14-23.   REDACTED is not only a "specifically delineated"

19   character, REDA is the "story being told."  *Rice*, 330 F.3d at 1170.

20   Another unmistakable example of copying is the setting in *Chainmail*.  The entire

21   story takes place in                         REDACTED

22               *Id.* ¶ 17.  Virtually every place mentioned in *Chainmail* is lifted

23   from materials published and owned by Hasbro.  *Id.* ¶¶ 17–21; *see also id.*, Ex. B-141–

24   145.  The script misappropriates not only the unique place names, but also the detailed

25   expressive attributes of the various cities and locales, including their geographic layout.

26   *Id.* ¶¶ 19–20.  Throughout their journey, the adventurers encounter beings, magical spells,

27   artifacts and other objects, all of which are expressed in and copied from the *D&D*

28   Property. *See generally id.*, Ex. B.

1        Although                REDACTED

2   virtually every other expressive element in the story was copied directly from the

3 Property.  *Id.* ¶ 12.  When the Infringing Elements are stripped from *Chainmail*, what

4 remains is a generic "Hero's Journey" that contains little to no expressive content worthy

5 of independent copyright protection.  *See id.* ¶ 28.

6       Both the quantity and quality of the Infringing Elements contained in the

7 *Chainmail* script establish substantial similarity.  *See Twentieth Century-Fox Film Corp.*

8 *v. MCA, Inc.*, 715 F.2d 1327, 1329 n.5 (9th Cir. 1983) (similarities between *Star Wars*

9 and *Battlestar Galactica*, including their characters, space vehicles and unusual settings,

10 precluded summary judgment); *Castle Rock*, 150 F.3d at 139 (trivia book that tests

11 reader's knowledge of "facts" from the *Seinfeld* series copied protected expression

12 because "each 'fact' tested by [the book] is in reality fictitious expression created by

13 *Seinfeld*'s authors"); *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 536

14 (S.D.N.Y. 2008) ("Each of the 2,437 entries in the [Harry Potter] Lexicon contains

15 'fictional facts' created by Rowling, such as the attributes of imaginary creatures and

16 objects, the traits and undertakings of major and minor characters, and the events

17 surrounding them."); *Paramount Pictures Corp. v. Carol Pub. Grp.*, 11 F. Supp. 2d 329,

18 333-34 (S.D.N.Y. 1998), *aff'd sub nom*, 181 F.3d 83 (2d Cir. 1999) ("*The Joy of Trek*

19 copies the fictitious facts that comprise 'the heart' of the Star Trek Properties.").

20       Finally, Sweetpea's assertion that the Infringing Motion Picture "does not even

21 exist" misses the point that the *Chainmail* script being developed by WB and Sweetpea

22 does exist.  The Copyright Act provides that "[a] work is 'created' when it is fixed in a

23 copy . . . for the first time; where a work is prepared over a period of time, the portion of

24 it that has been fixed at any particular time constitutes the work as of that time, and where

25 the work has been prepared in different versions, each version constitutes a separate

26 [potentially infringing] work."  17 U.S.C. § 101.  In *Walt Disney Productions v.*

27 *Filmation Associates*, this Court held that preparing an infringing script, even if it was

28 subject to later revisions and was being "used solely for the private purpose" of

developing it into a film for future release, was enough to violate Disney's exclusive right under Section 106 of the Copyright Act to reproduce and to authorize the reproduction of its copyright-protected materials.  *See* 628 F. Supp. 871, 876 (C.D. Cal. 1986).  Thus, regardless of whether Sweetpea further develops or revises the *Chainmail* script, or the Infringing Motion Picture is ultimately produced and released, Hasbro has a claim for copyright infringement *now* based on the existing script; moreover, discovery is likely to reveal evidence of additional acts of infringement.

### C.   Hasbro's Trademark Claims Are Ripe

Sweetpea contends that Hasbro's trademark claims are not ripe for adjudication. Mot. at 12.  Once again, Sweetpea's argument ignores both the law and the facts.

To establish either a trademark infringement claim under 15 U.S.C. § 1114(a) or a false designation of origin claim under 15 U.S.C. § 1125(a), Hasbro must show that Sweetpea is "using a mark confusingly similar to a valid, protectable trademark" of Hasbro's.  *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1047 n.8 (9th Cir.1999).  A dilution claim under 15 U.S.C. § 1125(c) requires Hasbro to show that "(1) the mark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services."  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998).  "Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena."  *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012) (quoting *Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999)).

Sweetpea challenges only Hasbro's alleged failure to establish that (i) Sweetpea used the *D&D* Trademark in commerce, and (ii) Sweetpea's use of the *D&D* Trademark is likely to cause consumer confusion.

### 1.    Sweetpea Used the *D&D* Trademark for Promotional Purposes

Trademark infringement arises from either "specific acts of alleged infringement or *an immediate capability and intent to produce an allegedly infringing item*." *Sweedlow, Inc. v. Rohm & Haas Co.*, 455 F.2d 884, 886 (9th Cir. 2009) (emphasis added).  Courts permit infringement claims to proceed where the defendant uses the plaintiff's trademark without authorization in preparation to sell a product that has not yet been produced.  *See Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1312 (9th Cir. 1997) ("naked offer" to sell counterfeit Levi's jeans actionable); *Young v. Vannerson*, 612 F. Supp. 2d 829, 847 (S.D. Tex. 2009) (infringement where preparations included defendant had "producing samples of various products incorporating the marks, testing the market, and contracting with a manufacturer"); *AARP v. 200 Kelsey Associates, LLC,* No. 06 Civ. 81, 2009 WL 47499, at *7 (S.D.N.Y. Jan. 8, 2009) ("use in commerce" satisfied where defendants were "actively seeking licenses to publish" an allegedly infringing magazine and had "conducted an extensive analysis of the publishing industry").

Here, Hasbro has demonstrated both "specific acts of infringement" and Sweetpea's "immediate capability and intent to produce" the Infringing Motion Picture using the *D&D* Trademark based upon the uncontested facts that:

- Sweetpea represented to WB (and to Hasbro in its response to the Hasbro Cease & Desist Letter) that it owns the rights to use and license the use of the *D&D* Trademark as the title of a theatrical motion picture based upon the *Chainmail* script.  Eisner Decl. ¶¶ 9, 11 & 14;

- Sweetpea entered into an agreement with WB licensing the rights to use the *D&D* Trademark as the title of the Infringing Motion Picture.  *Id.*;

- Sweetpea engaged in promotional activities by making statements to the trade press that Sweetpea has licensed to WB the right to make the Infringing Motion Picture based on *Dungeons & Dragons* and that the Infringing Motion Picture is "currently in advanced stages of development." *Id.*; and

---

- Sweetpea updated the Internet Movie Database to report film using the title "*Dungeons & Dragons*" is "in development" with WB.  *Id.* ¶ 12.

Under the cases cited above, these steps are sufficient for Hasbro's trademark infringement claims to proceed.  Discovery likely will reveal evidence of additional acts of infringement.[5]

## 2.  Sweetpea's Use of the *D&D* Trademark is Likely to Confuse Consumers

Sweetpea presents no evidence or arguments to support its assertion that Hasbro cannot show that the *D&D* Trademark is likely to cause consumer confusion.  This is because Sweetpea's use of the *D&D* Trademark to market and sell the Infringing Motion Picture is absolutely certain to confuse consumers.

"When one party knowingly adopts a mark similar to another's, reviewing courts presume that the defendant will accomplish its purpose, and that the public will be deceived."  *Acad. of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 158 (9th Cir. 1963) ("[W]hen the evidence does show or require the inference that another's name was adopted deliberately with a view to obtain some advantage from the good will, good name, and good trade which another has built up,

---

[5] Sweetpea's reliance on *Sobini Films v. Tri-Star Pictures, Inc.*, No. 01 Civ. 6615, 2001 WL 1824039 (C.D. Cal. Nov. 21, 2001), is misplaced.  In that case, the court found that the *plaintiff*, who was attempting to produce a film based on the Zorro character, had not taken enough "concrete steps" to obtain a declaratory judgment that its intended production would *not* infringe the *Defendant* studio's intellectual property.  Here, the roles are reversed.  Hasbro is not seeking a declaration that its intended use of the *D&D* Trademark would not infringe Sweetpea's rights, but is asserting claims against Sweetpea for infringing and threatening to infringe Hasbro's copyrights and trademarks in the Property, as well as a declaration that the Sequel Rights reverted to Hasbro.  *NTN Communications v. Interactive Network, Inc.*, No. 94 Civ. 20777, 1995 WL 569419 (N.D. Cal. Aug. 17, 1995), is easily distinguishable.  Unlike Hasbro, which has set forth specific steps of infringement, the plaintiff in that case alleged no steps that were taken by the defendant to use the relevant trademark in commerce.

then the inference of likelihood of confusion is readily drawn, for the very act of the adopter has indicated that he expects confusion and resultant profit.").

Here, the *D&D* Trademark is the type of strong mark to which the courts accord the strongest protection.  Sweetpea is knowingly using the *identical D&D* Trademark to produce, promote and sell the Infringing Motion Picture in the very same market Hasbro utilizes the *D&D* Trademark to identify its entertainment products.  Under these circumstances, there can be no question that Sweetpea's unlicensed use of the *D&D* Trademark is likely to confuse consumers, especially in light of Hasbro's agreement with Universal to produce a theatrical motion picture using the same title.  *See, e.g.*, *Park 'n Fly, Inc. v. Dollar Park & Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986) (likelihood of confusion is established where the two marks and the services provided are virtually identical); *Nat'l Lampoon, Inc. v. Am. Broad. Cos., Inc.*, 376 F. Supp. 733, 747 (S.D.N.Y. 1974) *aff'd*, 497 F.2d 1343 (2d Cir. 1974) (where television program adopts plaintiff's trademark as its title and uses plaintiff's magazine as the basis for its content, "[p]ublic confusion as to the source of the program is inevitable").

**D.     There is a Case or Controversy Warranting Declaratory Relief**

The Court should reject Sweetpea's claim that this case does not present a case or controversy necessary to warrant a declaratory judgment.

The Ninth Circuit has recognized that the "actual controversy" requirement in the Declaratory Judgment Act, 28 U.S.C. § 2201, is identical to the "case or controversy" requirement under Art. III of the U.S. Constitution.  *See Societe de Conditionement en Aluminium v. Hunter Engineering Co., Inc.*, 655 F.22 938, 942 (9th Cir. 1981).  A "case or controversy" exists when, under all the circumstances, "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Medimmune v. Genetech, Inc.*, 549 U.S. 118, 187 (2007).  Traditionally, courts have found a case or controversy where a party demonstrates a "real and reasonable apprehension" that it will be subject to litigation by the opposing party.  *See, e.g.*, *Schloss v. Sweeney*, 515 F. Supp. 2d 1068,

1075 (N.D. Cal. 2007).  Alternatively, a controversy may be evidenced by "specific acts of alleged infringement or an immediate capability and intent to produce an allegedly infringing item."  *Swedlow,* 455 F.2d at 886; *see also Young*, 612 F. Supp. 2d at 839 (actual controversy exists where defendant evidences a "definite intent and apparent ability to commence" trademark infringement).  Hasbro has met the standard for a declaratory judgment under either test.

*First*, Hasbro had a reasonable and real apprehension that they would be sued by Sweetpea.  *See* Eisner Decl. ¶ 10.  In response to the Hasbro Cease and Desist Letter, Sweetpea stated that it intended to sue Hasbro if Hasbro continued to assert that the Sequel Rights have reverted to Hasbro.  *Id.* ¶ 9.  The Ninth Circuit has held that such a threat is sufficient to cause a reasonable apprehension of litigation.  *See Rhoades v. Avon Prod.*, 504 F.3d 1151, 1157–58 (9th Cir. 2007) (letters written by counsel threatening litigation rendered plaintiff's apprehension "more than reasonable"); *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396–97 (9th Cir. 1982) (letter declaring intent to file opposition proceedings before USPTO sufficient to create "reasonable apprehension").

*Second*, as discussed above, Sweetpea's admissions are more than sufficient to establish Sweetpea's "immediate capability and intent" to infringe Hasbro's rights in the Property and render declaratory judgment appropriate at this stage.  After receipt of the Hasbro Cease and Desist Letter, Sweetpea continued to state in the trade press that (a) it had authorized WB to proceed with the development and production of a *D&D* movie based on the infringing *Chainmail* script and (b) the "studio is actually quite far along in the development of the project."  Eisner Decl. ¶¶ 11–14.  Sweetpea's statements are direct evidence that it is either presently infringing Hasbro's copyrights and trademarks. Allegations that a would-be infringer is merely searching for a partner to create an infringing publication have been held to demonstrate "definite intent and apparent ability" to infringe, rendering declaratory judgment appropriate.  *See AARP*, 2009 WL 47499, at *9 ("Securing a licensing partner to undertake actual publication of the

magazine presumably occurs only have one has made a number of concrete decisions concerning" the allegedly infringing work).  Here, Sweetpea has gone much further: it has partnered with WB, a major motion picture studio, to develop the infringing *Chainmail* script; they are in the "advanced stages of development;" and they intend to move forward despite the instant lawsuit.  *See* Eisner Decl. ¶¶ 8–14.  By either measure, an "actual controversy" exists between Hasbro and Sweetpea.

###    E.    In The Alternative, The Court Should Allow Plaintiffs To Obtain Discovery

In the alternative, Sweetpea's Motion is grossly premature and should be denied or stayed pending the completion of discovery.

Under Federal Rule 56(d), a court may deny or defer consideration of a motion for summary judgment when the "nonmovant shows, by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  To obtain such relief, the non-moving party "must show: (1) the likely existence of controverting evidence; (2) good cause for relief; (3) steps taken to obtain such evidence; and (4) how the facts are necessary to oppose the motion.  *See Ameron Int'l Corp. v. Cont'l Nat. Am. Grp.*, No. 11 Civ. 6879, 2011 WL 5873024, at *2 (C.D. Cal. Nov. 23, 2011).

Where the non-moving party satisfies these requirements, relief should be granted liberally under the rule.  *See Burlington Northern Santa Fe. R. Co v. Assinibonie and Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773–75 (9th Cir. 2003) ("Where. . . a summary judgment motion is filed so early in the litigation, before a party has any realistic opportunity to pursue discovery relating to its theory of the case, *district courts should grant any Rule 56(f) motion fairly freely*.") (emphasis added).  The Ninth Circuit has suggested that, where a motion for summary judgment predates discovery entirely, granting relief under Rule 56(d) is required.  *See Metabolife Intern. Inc. v. Wornick,* 264 F.3d 832, 846 (9th Cir. 2001) ("Although Rule 56[d] facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its motion, the Supreme Court has restated the rule as *requiring*, *rather than merely*

*permitting*, discovery where the nonmoving party has not had the opportunity to discovery information that is essential to its opposition.") (emphasis added).

Here, Hasbro has a valid, good faith basis to believe that Sweetpea and others have possession of controverting evidence that is reasonably necessary to fully oppose this Motion.  Each of the claims set forth in the Complaint ultimately turns on the question of whether the Sequel Rights have reverted to Hasbro and an interpretation of the Agreement between Sweetpea and Hasbro governing the grant (and reversion) of those rights.  While Hasbro argues that the Agreement is clear on its face, Sweetpea is likely to possess communications and other documents relating to the negotiation of the Agreement and the parties' intent that will confirm Hasbro's interpretation of the Agreement.  Wogan Decl. ¶¶ 4–6.

Moreover, Sweetpea and WB likely possess highly relevant evidence solely within their control that will controvert Sweetpea's position that Hasbro cannot demonstrate copyright and trademark infringement.  Mot. at 8–13.  Based on the evidence Hasbro does possess, including the *Chainmail* script and Sweetpea's statements to the press, Hasbro has a good faith basis to believe that Sweetpea and WB are far along in developing the Infringing Motion Picture.  Sweetpea and WB likely possess evidence of agreements, communications and other materials related to the *Chainmail* project that will demonstrate Sweetpea's further use of Infringing Elements and confirm Sweetpea's intent to continue using the *D&D* Trademark to sell and market the Infringing Motion Picture.  *Id.* ¶¶ 12–13.

Hasbro has not had the opportunity to obtain *any* discovery in this action.  Sweetpea filed the Motion on June 17, 2013, prior to answering the Complaint and before the parties exchanged initial disclosures or conducted the required Federal Rule 26(f) discovery conference.  Wogan Decl. ¶¶ 14–17.

Hasbro has taken steps to proceed with prompt discovery in this case.  *Id.* ¶¶ 15–22.  Hasbro has propounded requests for documents and interrogatories on Sweetpea and served third-party subpoenas on both WB and Vertigo Entertainment, Inc.  Wogan Decl.,

1  Exs. A-F; *id.* ¶¶ 15–22.  In their Federal Rule 26(f) conference, the parties agreed to an

2  expedited discovery schedule.  *See* Parties' Joint Fed. R. Civ. P. 26(f) Report [ECF No.

3  26].  Hasbro contends that these efforts will promptly result in the discovery of

4  controverting evidence necessary to fully respond to Sweetpea's Motion.

## **CONCLUSION**

6      Based on the foregoing and the accompanying declarations, Sweetpea's Motion

7  should be denied.

9  Dated: July 19, 2013

10  FRANKFURT KURNIT KLEIN &          LAVELY & SINGER P.C.
SELZ P.C.

12  BY:  / S/ *Maura Wogan*                    BY:  / S/ *Michael E. Weinsten*
      Maura J. Wogan (admitted *pro hac*          Michael E. Weinsten (No.
      *vice*)                                     155680)
13    Jeremy S. Goldman (admitted *pro*           Daniel Gutenplan (No. 260412)
      *hac vice*)
14  488 Madison Avenue, 10th Floor          2049 Century Park East, Suite 2400
New York, NY 10022                      Los Angeles, CA 90067-2906
15  Tel: (212) 980-0120                     Tel: (310) 556-3501
Fax: (212) 593-9175                     Fax: (310) 556-3615
16  mwogan@fkks.com                        mweinsten@lavelysinger.com
jgoldman@fkks.com                      dgutenplan@lavelysinger.com

18              *Attorneys for Plaintiffs Hasbro, Inc. and*
                *Wizards of the Coast LLC*

---

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION