1  Patricia L. Glaser, State Bar No. 55668
2  G. Jill Basinger, State Bar No. 195739
   David Sergenian, State Bar No. 230174
3  GLASER WEIL FINK JACOBS
4    HOWARD AVCHEN & SHAPIRO LLP
   10250 Constellation Boulevard, 19th Floor
5  Los Angeles, CA  90067
6  Telephone:  (310) 553-3000
   Facsimile:   (310) 556-2920
7
   Attorneys for Defendant
8  *SWEETPEA ENTERTAINMENT, INC.*
   *and Defendant/Counter-Claimant*
9  *SWEETPEA B.V.I. LTD.*

10

11              UNITED STATES DISTRICT COURT
           FOR THE CENTRAL DISTRICT OF CALIFORNIA
12                  WESTERN DIVISION

13  HASBRO, INC., *et al.*,                CASE NO.  13-CV-03406-DMG (JCGx)
14                                         **SWEETPEA'S MEMORANDUM OF**
              Plaintiffs,                  **POINTS AND AUTHORITIES IN**
15                                         **OPPOSITION TO PLAINTIFFS'**
16  v.                                     **MOTION FOR PARTIAL SUMMARY**
                                           **JUDGMENT**
17
    SWEETPEA ENTERTAINMENT,                [Statement of Genuine Disputes of Material
18  INC., *et al.*,                        Facts, Declaration of G. Jill Basinger]
19
              Defendants.
20
                                           Date:     January 24, 2014
21  AND RELATED COUNTERCLAIM.              Time:     3:00 p.m.
22                                         Ctrm:     7
23
                                           Complaint Filed:  May 13, 2013
24                                         Counterclaim Filed:  September 3, 2013
25
26
27                     **PUBLIC VERSION**
28

*Glaser Weil Fink Jacobs*
*Howard Avchen & Shapiro LLP*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................. 4

    **A.**   Sweetpea Has Exclusive Copyright, Trademark and Title Rights Under the License Agreement with Hasbro ........................................... 4

        **1.**   Sweetpea Has Exclusive Rights in the Dungeons & Dragons Copyrights and Trademarks ............................................... 4

        **2.**   With Limited Enumerated Exceptions, Sweetpea Is the Assignee of All Dungeons & Dragons Copyrights ......................... 4

        **3.**   Sweetpea Has Exclusive Rights to the Titles "Dungeons & Dragons" and "Advanced Dungeons & Dragons" ........................ 5

        **4.**   Sweetpea Has a Right of First Refusal/Last Negotiation With Respect to Any Dungeons & Dragons Movie Hasbro Wishes to Produce ........................................................................ 6

        **5.**   Hasbro Authorized a Dungeons & Dragons Screenplay Based on the Entire Dungeons & Dragons Property, Including Property Exclusively Licensed to Sweetpea .................................. 6

        **6.**   Under the Option Agreement Between Hasbro and Universal, Hasbro's Grant of Rights Exceeds the Rights Reserved to Hasbro ........................................................................ 7

III. LEGAL STANDARD ........................................................................... 7

IV.  ARGUMENT ........................................................................................ 8

    **A.**   Hasbro's Motion on Sweetpea's Copyright Claim Should Be Denied ................................................................................. 8

    **B.**   Hasbro's Motion on Sweetpea's Trademark Claims Is Without Merit Because Hasbro Does Not Have the Right to Permit Others to Use the Trademarks ................................................................. 11

V.   CONCLUSION .................................................................................... 18

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

i

847412

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ........................................ 8

*Covey v. Hollydale Mobilehome Estates*,
  116 F.3d 830, 834 (9th Cir.1997) .................................................................. 8

*General Teamsters Union Local No. 439 v. Sunrise Sanitation Servs., Inc.*,
  No. OS 9 Civ. 1208, 2006 WL 1153577, at *4 (E.D. Cal. Apr. 28, 2006) .............. 15

*Hardward Mut. Ins. Co. v. Dunwoody*,
  194 F.2d 666, 668 (9th Cir. 1952) ................................................................ 13

*International Union of Bricklayers v. Martin Jaska, Inc.*,
  752 F.2d 1401, 1405 (9th Cir.1985) .............................................................. 8

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
  475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ..................... 8

*Motorola, Inc. v. Pick*,
  CV 04-2655ABCSHX, 2004 WL 5472092 (C.D. Cal. June 22, 2004) ................... 12

*Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.*,
  69 Cal. 2d 33, 39–40 (1968) ........................................................................ 13

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assn.*,
  809 F.2d 626, 630 (9th Cir.1987) ................................................................. 8

*Villiarimo v. Aloha Island Air, Inc.*,
  281 F.3d 1054, 1061 (9th Cir. 2002) ........................................................ 8, 11

*Wolf v. Walt Disney Pictures & Television*,
  162 Cal. App. 4th 1107, 1129 (2008) ........................................................... 16

**Statutes**

Fed. R. Civ. P. 56 ....................................................................................... 7, 8

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     **INTRODUCTION**

Despite entering into agreements permitting third parties to use intellectual property solely licensed to Sweetpea,[1] Hasbro[2] contends that Sweetpea's Counterclaims for copyright and trademark infringement cannot go forward because Hasbro purportedly has not engaged in any infringing conduct.  Hasbro's motion not only ignores key facts, it is also wildly inconsistent with positions Hasbro itself has taken in opposing Sweetpea's prior motion for summary judgment.

In late 2012, Hasbro and Universal Pictures ("Universal") negotiated an agreement under which Universal could produce a Dungeons & Dragons movie. Pursuant to that agreement, Hasbro purported to transfer copyrights, trademarks and titles rights it did not own to Universal, and authorized the development and writing of a Dungeons & Dragons screenplay.  Notably, Hasbro does not dispute in its Uncontroverted Facts that it authorized Universal to use Sweetpea's copyrights, trademarks and title rights.

Moreover, notwithstanding Hasbro's assertion that no script, story, treatment, or other written material was created for the Universal Project, the documents tell a different story.  Hasbro commissioned a screenwriter to write a screenplay in 2012. Work on that script apparently began as early as January 2013.  Around the same time, the screenwriter attended a "story summit" with authors and Hasbro executives. Hasbro's representation, in light of the foregoing, that no written work of any kind exists, and that even though executives and creative personnel convened for a "story summit," no written work preceded or came out of that meeting strains credulity. These intensely factual issues must be determined by the jury at trial.

---

[1] As used herein, "Sweetpea" refers to Defendant and Counter-Claimant Sweetpea B.V.I. Ltd.

[2] As used herein, "Hasbro" refers collectively to Plaintiffs and Hasbro, Inc. and Wizards of the Coast, LLC.

1



Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

21    Without addressing any of these facts and issues, Hasbro contends that no jury

22 can find that their conduct constitutes copyright infringement as matter of law.  It is

23 an interesting position for Counter- Defendants to take given their prior positions in

24 litigation.  In opposition to Sweetpea's prior summary judgment on Plaintiffs'

25 copyright infringement claim, Hasbro argued that "the evidence submitted by Hasbro

26 on this Motion, including Sweetpea's admissions that it authorized WB to exploit the

27 Sequel Rights and that the Infringing Motion Picture is in 'advanced stages of

28 development,'" were sufficient evidence for this Court to deny Sweetpea's motion.

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1  (Plaintiffs' Corrected Memorandum of Points and Authorities in Opposition to

2  Defendants' Motion for Summary Judgment and/or Partial Summary Judgment (Jul.

3  25, 2013) [Dkt 39] at 2.)  Subsequent discovery has shown that Sweetpea did not

4  write a screenplay, or any treatment, outline, or other written work relating to its

5  movie project, nor did it authorize anyone to create a written work.  Under Hasbro's

6  own legal standard, however, Hasbro's authorization of Universal's use of Sweetpea's

7  copyrights, along with their authorization of a screenplay based on those copyrights,

8  constitutes copyright infringement.

9       Hasbro also moves for summary judgment on Sweetpea's trademark claims,

10  arguing that Hasbro is permitted to transfer its right to use the words "Dungeons &

11  Dragons" and/or "Advanced Dungeons & Dragons" as a secondary film title to any

12  third party, including Universal, and therefore cannot be held liable for trademark

13  infringement.  ██████████████████████████████████████

14  ████████████████████████████; indeed, Hasbro admits that it transferred this

15  right.  (*See* Mot. at 6–9, 11.)  Hasbro's only defense to Sweetpea's trademark claims

16  is its assertion that it is authorized under the Agreement to allow Universal to use

17  "Dungeons & Dragons" and/or  "Advanced Dungeons & Dragons" as a secondary

18  title.  Not so.  Under the plain language of the Agreement, Hasbro is not allowed to

19  permit a third party to use those trademarks.  Hasbro offers various theories that it

20  claims support its interpretation of the contract.  Hasbro's theories, however, have no

21  merit.  The plain language of the Agreement is clear:  Hasbro and no other party is

22  permitted to use "Dungeons & Dragons" and/or "Advanced Dungeons & Dragons" in

23  a secondary title.  (AMF[3] ¶ 2.)  Moreover, Sweetpea principal Courtney Solomon has

24  testified that it was always the intent of the parties to prohibit Hasbro from assigning

25

26  _____

27  [3] As used herein, "AMF" refers to the Additional Material Facts in Sweetpea's
concurrently-filed Statement of Genuine Disputes of Material Facts in Opposition to
Plaintiffs' Moion for Partial Summary Judgment; Additional Material Facts;

28  Conclusions of Law.

SWEETPEA'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

847412

title rights to third parties.  (AMF ¶ 1.)  Given that Hasbro has authorized Universal to use intellectual property, including titles rights belonging to Sweetpea, Hasbro's motion for summary judgment should be denied in its entirety.  Indeed, given the uncontroverted facts, summary judgment should be entered on the trademark claim in Sweetpea's favor.

## II.   FACTUAL BACKGROUND

### A.   Sweetpea Has Exclusive Copyright, Trademark and Title Rights Under the License Agreement with Hasbro

#### 1.   Sweetpea Has Exclusive Rights in the Dungeons & Dragons Copyrights and Trademarks

Sweetpea's Counterclaim alleges that Sweetpea is the owner in perpetuity of the Dungeons & Dragons copyrights with respect to live-action motion pictures pursuant to a license agreement between Sweetpea and Hasbro Inc.'s ("Hasbro") predecessor TSR, Inc. ("TSR") (the "Agreement").  (AMF ¶ 3.)  In addition, Sweetpea has the right to exclude others, including Hasbro, from using Dungeons & Dragons copyrighted material and trademarks in connection with live-action movies. (AMF ¶ 4.)

#### 2.   With Limited Enumerated Exceptions, Sweetpea Is the Assignee of All Dungeons & Dragons Copyrights

At the time of the "Amendment to Agreement" dated June 8, 1998 (the "Second Amendment"), TSR was contemplating merging its Advanced Dungeons & Dragons property with its Dungeons & Dragons property.  (AMF ¶ 5.)  ████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████  The original Agreement defined the "Property" licensed to Sweetpea to include all Dungeons & Dragons property, and to exclude Advanced Dungeons & Dragons property, with the caveat that any property that appeared in both Dungeons & Dragons and Advanced Dungeons & Dragons, was included in the "Property."  (AMF ¶ 6.)  The Second Amendment

4

847412

1   acknowledged the merger of Dungeons & Dragons and reserved to TSR only certain

2   enumerated Dungeons & Dragons settings from "Property."  (AMF ¶ 7.)

3   Furthermore, the Second Amendment provides that any character classes, spells and

4   magical items used as generic terms which are both part of the D&D and AD&D

5   worlds" are included in the "Property."  (AMF ¶ 8.)  Accordingly, after the Second

6   Amendment, all Dungeons & Dragons property, including Advanced Dungeons &

7   Dragons property, which was subsequently merged into Dungeons & Dragons, with

8   the exception of certain Dungeons & Dragons property specifically reserved in the

9   Second Amendment to TSR, was licensed exclusively to Sweetpea.  (AMF ¶ 9.) ▮

10   ██████████████████████████████████████████████████

11   ███████████████████████

12          **3.     Sweetpea Has Exclusive Rights to the Titles "Dungeons &**

13          **Dragons" and "Advanced Dungeons & Dragons"**

14          Under the Agreement, Sweetpea has the exclusive right to use the words

15   "Dungeons & Dragons" and/or "Advanced Dungeons & Dragons" in a primary title in

16   a live-action motion picture or television program, and the exclusive right allow

17   others to use the words "Dungeons & Dragons" and/or "Advanced Dungeons &

18   Dragons" in a secondary title.  (AMF ¶ 11.)  Hasbro has the right to use "Dungeons &

19   Dragons" and/or "Advanced Dungeons & Dragons" as a secondary title in a live-

20   action motion picture, but it does not have the right to permit others to use those

21   words as a secondary title in a live-action motion picture.  (AMF ¶ 33.)  Furthermore,

22   Hasbro is required to "cooperate in good faith with Sweetpea on the use of the words

23   'Dungeons & Dragons' and/or 'Advanced Dungeons & Dragons' so as to minimize

24   the competitive impact of any of [Hasbro's] motion pictures or television programs

25   with any of Sweetpea's motion pictures or television programs."  (AMF ¶ 12.)

26

27

28

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

SWEETPEA'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

847412

**4.      Sweetpea Has a Right of First Refusal/Last Negotiation With Respect to Any Dungeons & Dragons Movie Hasbro Wishes to Produce**

The Agreement provides Sweetpea with a Rights of First Refusal/Last Negotiation.  Per the Agreement, if Hasbro wishes to produce any live-action motion picture based on the "Property" with a third party, it must first offer Sweetpea the right to produce the movie on the same terms being offered to the third party.  (AMF ¶ 13.)  Hasbro did not offer Sweetpea the right to produce a movie on the same terms as the Universal deal.  (AMF ¶ 16.)

Hasbro Breached the Agreement and Infringed Sweetpea's Copyrights and Trademarks When It Authorized a Dungeons & Dragons Screenplay and Assigned Sweetpea's Copyrights and Trademarks to Third Parties

**5.      Hasbro Authorized a Dungeons & Dragons Screenplay Based on the Entire Dungeons & Dragons Property, Including Property Exclusively Licensed to Sweetpea**

SWEETPEA'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT



**III.  LEGAL STANDARD**

Fed. R. Civ. P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim."  Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is

1  entitled to judgment/adjudication as a matter of law.  Fed. R. Civ. P. 56 (c);

2  *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348,

3  1356, 89 L.Ed.2d 538 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors*

4  *Assn.*, 809 F.2d 626, 630 (9th Cir.1987).  The purpose of summary judgment is to

5  "pierce the pleadings and assess the proof in order to see whether there is a genuine

6  need for trial."  *Matsushita Elec.*, 475 U.S. at 586, n. 11, 106 S.Ct. 1348;

7  *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th

8  Cir.1985).  On summary judgment, a court must decide whether there is a "genuine

9  issue as to any material fact," not weigh the evidence or determine the truth of

10  contested matters.  Fed. R. Civ. P. 56(c); *Covey v. Hollydale Mobilehome Estates*, 116

11  F.3d 830, 834 (9th Cir.1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90

12  S.Ct. 1598, 26 L.Ed.2d 142 (1970).  A trial court must draw all reasonable inferences

13  supported by the evidence in favor of the non-moving party.  *Villiarimo v. Aloha*

14  *Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

15  **IV.    ARGUMENT**

16      **A.    Hasbro's Motion on Sweetpea's Copyright Claim Should Be Denied**

17          Hasbro's motion should be denied because there is a genuine dispute of

18  material fact with respect to whether Hasbro has created an infringing work.  Hasbro

19  asks this Court to dismiss Sweetpea's copyright claim on the grounds that purportedly

20  "no reasonable juror could find that any work relating to the Universal Film Project

21  has been fixed in a tangible medium of expression…" (Mot. at 10.)  The evidence,

22  however, shows that Hasbro authorized Universal and other third parties to create

23  infringing works, and purported to transfer to Universal rights in the Dungeons &

24  Dragons property that belong to Sweetpea.  Hasbro's motion asserts that "[n]o script,

25  story, treatment, or other written material was ever created for the Universal Film

26  Project." (Hasbro's Uncontroverted Facts ["SUF"] ¶ 13.)  Emails produced by

27  Hasbro tell a different story.  In addition to establishing that Hasbro authorized

28  Universal to use material exclusively licensed to Sweetpea, the facts would allow a

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

jury to conclude that infringing works in a tangible medium relating to the Universal Project have been created:



SWEETPEA'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

847412



Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

---

[4] The factual record on Hasbro's conduct in developing and producing a Dungeons & Dragons movie is in sharp contrast to the factual record on Sweetpea's conduct. Plaintiffs are unable to point to any evidence in the record of a written work by Sweetpea that uses Dungeons & Dragons copyrighted material.  The *Chainmail* script was written without any input and sent to Sweetpea after it was first shopped to Hasbro.  (AMF ¶ 42.)  Sweetpea did not edit the *Chainmail* script, did not take any notes while reviewing the script, and did not write anything down in connection with the script.  (AMF ¶ 43.)  Sweetpea has not licensed any copyrights or trademarks to Warner Bros., nor has it authorized Warner Bros. to proceed with *Chainmail*.  (AMF ¶ 44.)  It is undisputed that Sweetpea has not created any allegedly infringing work.

847412



Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

20     **B.**    **Hasbro's Motion on Sweetpea's Trademark Claims Is Without**
21             **Merit Because Hasbro Does Not Have the Right to Permit Others to**
            **Use the Trademarks**
22

      Sweetpea's Counterclaim asserts that Hasbro infringed Sweetpea's trademarks
23
by improperly purporting to transfer to Universal the right to use "Dungeons &
24
Dragons" and/or "Advanced Dungeons & Dragons" as a secondary title in a live-
25
action motion picture.  (Counterclaim ¶¶ 47, 48.)  Notably, Hasbro concedes this fact:
26
it fails to assert in its motion that Hasbro has not authorized Universal to use these
27
trademarks in a motion picture title by not addressing the issue in its Separate
28

SWEETPEA'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

847412

1  Statement of Uncontroverted Facts.  *See Motorola, Inc. v. Pick*, CV 04-

2  2655ABCSHX, 2004 WL 5472092 (C.D. Cal. June 22, 2004) (denying summary

3  judgment motion for, among other reasons, failure to assert relevant facts in a

4  separate statement of uncontroverted facts).

5       Hasbro further admits that the sole issue in their motion on Sweetpea's

6  trademark claims[5] is "whether Hasbro is prohibited by the Agreement or the law from

7  licensing or assigning its reserved Secondary Title Rights to third parties."  (Mot. at

8  12.)  All of Hasbro's arguments in support of this assertion are without merit.

9       First, Hasbro argues that the plain language of the Agreement allows Hasbro to

10  license the right to use "Dungeons & Dragons" and/or "Advanced Dungeons &

11  Dragons" to third parties.  The plain language provides the opposite.  Paragraph 14(b)

12  of the First Amendment provides in relevant part:

13           After January 1, 2000, [Hasbro] ***shall not use or permit others to***

14           ***use*** the words "Dungeons & Dragons" and/or "Advanced

15           Dungeons & Dragons" in the primary title of any live-action

16           motion picture or television program, ***provided [Hasbro] may use***

17           the words "Dungeons & Dragons" or "Advanced Dungeons &

18           Dragons" in a secondary title …

19  (AMF ¶ 34.)  The language is clear and unambiguous that only Hasbro may use the

20  marks in a secondary title.  This is clear not only from the language of Paragraph

21  14(b), but also by comparing the above-quoted language to the language of Paragraph

22  14(c).  Paragraph 14(c) shows that when the parties intended to grant TSR, Hasbro's

23  predecessor, the right to permit others to use the words "Dungeons & Dragons" or

24  "Advanced Dungeons & Dragons" in the title, they did so explicitly.  Paragraph 14(c)

25  provides in relevant part:

26

27  [5] Hasbro makes this argument as to Sweetpea's Third Counterclaim for False
     Designation of Origin and Unfair Competition and its Fourth Counterclaim for
28  Trademark Dilution.

847412

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

> Upon execution of the formal amendment, TSR may use or permit
> others to use the words "Dungeons & Dragons" and/or "Advanced
> Dungeons & Dragons"  in the primary or secondary title of any
> animated theatrical motion picture or animated television program.

(AMF ¶ 35.)

The parties' omission of similar language in Paragraph 14(b) establishes with certainty that they intended that only TSR could use the words "Dungeons & Dragons" and/or "Advanced Dungeons & Dragons" as a secondary title in a live-action motion picture, and that TSR had no right to permit others to do so.  *See Hardward Mut. Ins. Co. v. Dunwoody*, 194 F.2d 666, 668 (9th Cir. 1952) ("Expressio unius est exclusio alterius – the expression of one thing is the exclusion of another."). Moreover, given that Paragraph 14(b) is clear on its face, summary judgment in favor of Sweetpea is appropriate.  *See Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.*, 69 Cal. 2d 33, 39–40 (1968) (the interpretation of a contract is a judicial function).  Accordingly, Sweetpea requests that the Court find as a matter of law that Hasbro does not have the right to permit third parties to use the words "Dungeons & Dragons" and/or "Advanced Dungeons & Dragons" as a secondary title in a live-action motion picture.

Second, Hasbro argues that because Hasbro, pursuant to Paragraph 4(b) of the Agreement, had the right to grant others the right to make motion pictures based on Advanced Dungeons & Dragons, "the only plausible interpretation" of Paragraph 14(b) of the First Amendment is that Hasbro also has the right to permit others to use the marks in a secondary title.  (Mot. at 14.)  Hasbro's logic appears to be that it would make no sense for Hasbro to be allowed to permit a third party to make an Advanced Dungeons & Dragons movie without also granting that third party to right to use the marks in a secondary title.

The Agreement, however, clearly contemplates a period of time during which Hasbro would be permitted to make an Advanced Dungeons & Dragons movie but

13

847412

1  not have the right to use the words "Dungeons & Dragons" or "Advanced Dungeons

2  & Dragons" in a secondary title.  Paragraph 14(a) of the First Amendment prohibited

3  Hasbro, prior to January 1, 2000, not only from permitting third parties to use the

4  marks in a secondary title, but also from using the marks in a secondary title itself.

5  (AMF ¶ 36.)  Nothing in the Agreement prohibited Hasbro from making or permitting

6  others to make a motion pictures based solely on Advanced Dungeons & Dragons

7  prior to January 1, 2000.  (AMF ¶ 37.)  Accordingly, the Agreement expressly

8  provides that there would be a period of time when Hasbro would be permitted to

9  make an Advanced Dungeons & Dragons movie but not have the right to use the

10  words "Dungeons & Dragons" or "Advanced Dungeons & Dragons" in a secondary

11  title.  Hasbro's argument that the parties would never agree that Hasbro could license

12  an Advanced Dungeons & Dragons motion picture without the title is affirmatively

13  incorrect.  Moreover, because Sweetpea has the exclusive right to allow others to use

14  the title, a third party interested in making a film based on the reserved property

15  would simply need to negotiate that title right with Sweetpea.

16       Third, Hasbro appears to argue that Sweetpea cannot establish trademark

17  infringement because Hasbro has the right "to assign, sublet, or transfer" the

18  Agreement.  (Mot. at 14–15.)  That argument is a non sequitur because Hasbro has

19  not presented any evidence in its motion that it assigned, sublet or transferred the

20  Agreement to any third party.  Contrary to Hasbro's assertion, the Agreement does

21  not provide that Hasbro can assign individual rights under the Agreement to third

22  parties.  Paragraph 13(c) of the Agreement expressly provides that Hasbro can only

23  assign, sublet or transfer the *entire* Agreement:

24       Licensor may assign, sublet, or transfer this Agreement to any

25       person, firm, or corporation, without limitation, ***provided,***

26       ***however, that the purported assignee is able to assume all of***

27       ***Licensor's rights and obligations hereunder*** and that the

28       assignment in no way affects, any of the rights granted to Licensee

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1    hereunder or any of the representations and warranties of Licensor

2    hereunder (e.g. any purported assignee of Licensor must become

3    the holder of the rights granted to Licensee in this Agreement).

4  (AMF ¶ 38 (emphasis added).)  Moreover, any such assignee is required to assume all

5  of Hasbro's rights in writing.  (AMF ¶ 39.)  Hasbro has presented no evidence that

6  any such written assignment exists.  Moreover, not only has Hasbro failed to present

7  evidence that it has assigned all of their rights and obligations to Universal in

8  accordance with the Agreement, the draft option agreement between Universal and

9  Hasbro shows that Hasbro purported to assign to Universal only a portion of its

10  alleged rights under the Agreement.  (AMF ¶ 40.)

11    Fourth, Hasbro argues that under general principles of contract law, "a

12  contractual right is assignable unless assignment to another would materially change

13  the terms of the contract or the contract validly precludes assignments by its terms."

14  (Mot. at 15 (quoting *General Teamsters Union Local No. 439 v. Sunrise Sanitation*

15  *Servs., Inc.*, No. OS 9 Civ. 1208, 2006 WL 1153577, at *4 (E.D. Cal.

16  Apr. 28, 2006)).)  As discussed above, Hasbro may only assign its rights under the

17  Agreement if (a) the assignee becomes the holder of all of Hasbro's rights under the

18  Agreement; and (b) the assignee assumes Hasbro's rights in writing.  (AMF ¶¶ 38,

19  39.)  Neither of those two conditions, expressly required by the Agreement, have been

20  met, and therefore the rule cited in *General Teamsters* does not apply.

21    Finally, Hasbro argues that it is simply "common sense" that the parties never

22  would have agreed to a provision that prohibits Hasbro from allowing third parties to

23  use the "Dungeons & Dragons" or "Advanced Dungeons & Dragons" marks in a

24  secondary title.  (Mot. at 15.)  As a preliminary matter, Hasbro does not cite to any

25  authority, and Sweetpea is not aware of any, that would permit the Court to determine

26  the meaning of written instrument based on "common sense" when Hasbro's

27  proffered meaning directly contradicts the plain language of the First Amendment.

28  *Cf. Morais v. Central Beverage Corp. Union Employee's Supplemental Retirement*

15

*Plan*, 167 F.3d 709, 712 (1st Cir. 1999) (**federal common law** includes the "common sense cannons of contract interpretation ... including the teaching that contracts containing unambiguous language must be construed according to their plain and natural meaning.") (emphasis added).  In any event, the objective mutual intent of the parties is clear from the language of the First Amendment:  the parties did not grant Hasbro's predecessor the right to permit others to use the words "Dungeons & Dragons" or "Advanced Dungeons & Dragons" as a secondary title of a live-action motion picture.  Hasbro's request that the Court rewrite the terms of the First Amendment is improper.  *See Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1129 (2008) (it "is not a proper judicial function" for a court to "rewrite [a] contract to confer a right not bargained for.").

Even if the Court were to look beyond the four corners of the First Amendment, summary judgment in Hasbro's favor is improper because extrinsic evidence contradicts Hasbro's interpretation of Paragraph 14(b) and is wholly in line with the plain language of the Agreement.  Testimony by Sweetpea principal Courtney Solomon establishes that the parties to the First Amendment agreed, after lengthy discussions on the issue, that the only person other than Sweetpea who would be permitted to use the marks as a title for a live-action film were Sweetpea, and subject to certain restrictions, was TSR.  As Sweetpea has testified, the prohibition against TSR permitting third parties to use the words "Dungeons & Dragons" or "Advanced Dungeons & Dragons" was agreed to by the parties as part of a compromise that involved Sweetpea terminating holdbacks on TSR's ability to make an Advanced Dungeons & Dragons motion picture in exchange for TSR agreeing not to permit third parties to use the marks as secondary (or primary) title of a live-action motion picture.  As Mr. Solomon testified:

> There were lots of discussions about the issue because it was a
> major give for something else that they wanted stricken from the
> original agreement.  And so the compromise was then if we met

847412

1    the obligations of the First Amendment with respect to making the

2    first movie, the picture, then that's what we would get was the title.

3    That's the compromise that was reached.

4                          *   *   *

5    [The "big give"] was the holdbacks provided in Paragraph 4B of

6    the agreement were terminated.

7                          *   *   *

8    [In return, Sweetpea was granted] [t]he exclusive title usage for

9    "Dungeons & Dragons" on its titles and also an assurance that

10    nobody else would be using "Dungeons & Dragons" or "Advanced

11    Dungeons & Dragons" on any other projects in the future unless,

12    as we understood, it was TSR's own projects.

13  (AMF ¶ 1.)  Notably, Lee Rosenbaum, whose lengthy declaration regarding

14  negotiation of the First Amendment is attached to Hasbro's motion, does not address

15  these extensive negotiations.  Most importantly, Hasbro's interpretation runs afoul of

16  the very exclusivity that Sweetpea bargained for and received with respect to title

17  rights.  Sweetpea was granted the "the sole, irrevocable license throughout the

18  universe" to use the "Dungeons & Dragons" trademark.  (AMF ¶ 41.)  Hasbro

19  reserved the right to use the trademark as a secondary title.  If Hasbro had the right to

20  permit others to use the trademark, the grant to Sweetpea would not have been

21  exclusive.

22       On this record, summary judgment in favor of Hasbro would be improper.

23  Indeed, given that the language of the Agreement is clear, and that Mr. Solomon's

24  testimony is uncontradicted, this Court should enter judgment on the trademark claim

25  in Sweetpea's favor.

26

27

28

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

17

847412

# V.   <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Plaintiffs' Motion for Partial Summary Judgment in its entirety.


DATED:  January 6, 2014          GLASER WEIL FINK JACOBS
                                   HOWARD AVCHEN & SHAPIRO LLP


                                 By:  /s/ G. Jill Basinger
                                      PATRICIA L. GLASER
                                      G. JILL BASINGER
                                      DAVID SERGENIAN
                                      *Attorneys for Defendant Sweetpea*
                                      *Entertainment, Inc. and*
                                      *Defendant/Counter-Claimant Sweetpea*
                                      *B.V.I. Ltd.*

SWEETPEA'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

847412