1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HASBRO, INC., a Rhode Island corporation; and WIZARDS OF THE COAST LLC, a Delaware limited liability company, | Case No.: CV 13-03406-DMG (JCG) |
| Plaintiffs, | **FINAL PRETRIAL CONFERENCE ORDER** |
| vs. | |
| SWEETPEA ENTERTAINMENT, INC., a Delaware corporation; and SWEETPEA B.V.I. LTD., a British Virgin Islands corporation, | |
| Defendants. | Pretrial Conference:  February 25, 2014 Trial Date:  **April 1, 2014, 8:30 a.m.** |
| SWEETPEA B.V.I. LTD., | |
| Counter-Claimant, | |
| vs. | |
| HASBRO, INC., and WIZARDS OF THE COAST, LLC, | |
| Counter-Defendants. | |

FINAL PRETRIAL CONFERENCE ORDER

854270.1

Following pretrial proceedings, pursuant to Fed. R. Civ. P. and Local Rule ("L.R.") 16 and the Court's Orders, IT IS ORDERED:

## 1.   PARTIES AND PLEADINGS

The parties are:

- Plaintiffs/Counterclaim Defendants:  Hasbro, Inc., a Rhode Island corporation, and Wizards of the Coast LLC, a Delaware limited liability company (together, "Hasbro").
- Defendants/Counter-Claimants:  Sweetpea Entertainment, Inc., a Delaware corporation, and Sweetpea B.V.I. Ltd, a British Virgin Islands corporation (together, "Sweetpea").

All of the parties named in the pleadings have been served and have appeared.

The pleadings which raise the issues are:

- Hasbro's Complaint, filed May 13, 2013;
- Sweetpea's Answer and Affirmative Defenses and Sweetpea B.V.I. Ltd.'s Counterclaim, filed September 3, 2013; and
- Hasbro's Answer and Affirmative Defenses to the Counterclaim, filed September 24, 2013.

## 2.   FEDERAL JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1338(a) (copyright and trademark), and 1367 (supplemental jurisdiction), as well as 15 U.S.C. § 1121(a) (trademark).  Sweetpea alleges that the Court has subject matter jurisdiction over Sweetpea's Counterclaim pursuant to 28 U.S.C. § 1332(a) (diversity of citizenship).  Further, 28 U.S.C. § 2201 authorizes this Court to grant the requested declaratory relief.[1]  Venue is proper pursuant

---

[1] In light of the "dueling" and ongoing efforts by Hasbro (with Universal Pictures) and Sweetpea (with WB) to produce *D&D* motion pictures, this case presents an "actual controversy" in which the Court is empowered to, and should, grant declaratory relief setting forth the parties' respective contractual rights.  *See Hollywood Foreign Press Ass'n v. Red Zone Capital Partners II*, 870 F. Supp. 2d 881, 916 (C.D. Cal. 2012). ("There is a justiciable controversy . . . regarding the meaning of the [contract], and

to 28 U.S.C. § 1391(a)(1) and (c), because each of the defendants has its principal place of business and/or transacts substantial business in Los Angeles, California.  The facts requisite to federal jurisdiction are admitted.

### 3.   TRIAL TIME ESTIMATE

The Court has allocated no more than six days for the trial of this case.

### 4.   JURY/NON-JURY TRIAL

Since all remaining claims are equitable in nature, the matter shall be tried by the Court sitting without a jury.  [*See* Doc. # 190.]

### 5.   ADMITTED FACTS

The parties have filed under separate cover a document of "Admitted Facts" that includes the facts that are admitted and require no proof.

### 6.   STIPULATED FACTS

The parties have not filed any stipulated facts.

### 7.   CLAIMS AND DEFENSES

### HASBRO'S CLAIMS:

**A.   Claims and Elements**

Hasbro will pursue the following claims against Sweetpea:

**CLAIM 1**:  Sweetpea has violated Hasbro's exclusive rights under 17 U.S.C. § 106 by materially contributing to Warner Bros. Pictures' ("WB") infringement of Hasbro's copyrights in the *D&D* property.

**ELEMENTS:** To prove the first claim, Hasbro must show by a preponderance of the evidence that:

(1)   Hasbro owns the copyrights it claims were infringed;

(2)   WB engaged in conduct that infringed Hasbro's copyrights;

(3)   Sweetpea had knowledge of WB's infringing conduct; and

declaratory relief is appropriate because it will clarify and settle the parties' rights and obligations with respect to the [contract], and eliminate uncertainty, insecurity and doubt as to the meaning of the [contract].").

      (4)     Sweetpea induced, caused, or materially contributed to WB's infringing conduct.

**CLAIM 2**:  Sweetpea's unauthorized use of Hasbro's federally-registered trademark "DUNGEONS & DRAGONS" (the "*D&D* Trademark") constitutes trademark infringement in violation of 15 U.S.C. §1114.

      **ELEMENTS:** To prove the second claim, Hasbro must show by a preponderance of the evidence that:

      (1)     Hasbro has a protectable ownership interest in the *D&D* Trademark;

      (2)     Sweetpea used the *D&D* Trademark in commerce without Hasbro's authorization; and

      (3)     Sweetpea's use of the *D&D* Trademark is likely to cause consumer confusion.

**CLAIM 3**:  Sweetpea's unauthorized use of the *D&D* Trademark constitutes false designation of origin and unfair competition in violation of 15 U.S.C. §1125(a)(1)(A).

      **ELEMENTS:**  To prove the third claim, Hasbro must show by a preponderance of the evidence that:

      (1)     Hasbro has a protectable ownership interest in the *D&D* Trademark;

      (2)     Sweetpea used the *D&D* Trademark in commerce without Hasbro's authorization; and

      (3)     Sweetpea's use of the *D&D* Trademark is likely to cause confusion about the origin of the goods associated with the *D&D* Trademark.

**CLAIM 4**:  Sweetpea's unauthorized use of Hasbro's famous *D&D* Trademark is likely to dilute and impair the famous and distinctive quality of the *D&D* Trademark in violation of 15 U.S.C. §1125(c).

      **ELEMENTS:**  To prove the fourth claim, Hasbro must show by a preponderance of the evidence that:

      (1)     the *D&D* Trademark is famous;

(2)    Sweetpea used the *D&D* Trademark in commerce without Hasbro's authorization;

(3)    Sweetpea used the *D&D* Trademark after it became famous; and

(4)    Sweetpea's use of the *D&D* Trademark caused actual dilution of the *D&D* Trademark.

**CLAIM 5:**  Hasbro seeks a declaration that Sweetpea's rights, granted under paragraph 6 of the First Amendment, to produce and exploit theatrical and non-theatrical motion picture sequels, prequels and remakes based upon the "Picture," the "Picture Creations" and the "Property" (as those terms are defined in the License Agreement) (the "Sequel Rights"), reverted to Hasbro.

**ELEMENTS:**  To prove the fifth claim, Hasbro must show by a preponderance of the evidence that Sweetpea did not timely satisfy the conditions specified in the Agreement necessary to prevent the Sequel Rights from reverting to Hasbro.

**B.    Key Evidence**

In brief, the key evidence Hasbro relies on for each of the claims is:

**CLAIM 1:  Contributory Copyright Infringement**

Hasbro alleges that, in light of the reversion of the Sequel Rights (*see* Claim 5), Sweetpea is liable for contributing to WB's infringement of Hasbro's copyrights by authorizing WB to develop and produce a theatrical motion picture based upon an unauthorized script entitled *Chainmail* (the "*Chainmail* script") that contains numerous protected elements from Hasbro's *Dungeons & Dragons* property.

There are no genuine disputes of material fact concerning the majority of the elements of Hasbro's contributory copyright claim.  Sweetpea does not contest Hasbro's ownership of the copyrights in the various *D&D* materials that are contained in the *Chainmail* script.  In addition, representatives from Hasbro will testify regarding Hasbro's creation and ownership of the *D&D* materials, including presenting the books and other publications containing the materials.  Hasbro also will present evidence of the

relevant copyright registrations, as well as assignments and other documents demonstrating Hasbro's chain of title to the relevant copyrights.

Sweetpea also does not contest that the *Chainmail* script contains numerous elements from the *D&D* property.  Indeed, the evidence will include emails, written by Sweetpea principal Courtney Solomon ("Solomon"), admitting that the *Chainmail* script includes numerous protected *D&D* elements that would constitute infringement if they were not duly authorized by the appropriate rights holder.  In addition, testimony from David Leslie Johnson, the writer of the *Chainmail* script, as well as James Wyatt, Hasbro's highly-knowledgeable Creative Manager for *D&D*, will further confirm the breadth and scope of infringing elements contained in the *Chainmail* script.

Thus, the only genuine dispute of material fact on Hasbro's claim for contributory copyright infringement is whether, after the Sequel Rights reverted to Hasbro, Sweetpea induced, caused or materially contributed to WB's infringing conduct.  Evidence of this element centers on the fact that Sweetpea ratified the *Chainmail* script and authorized WB to develop it into a theatrical *D&D* motion picture.  Hasbro will proffer testimony and documents showing that:

(1)    Sweetpea represented to WB that it owns the rights necessary to authorize the development of the *Chainmail* script;

(2)    In light of those representations, WB "greenlit" the development of the script and the parties entered into an option purchase agreement granting WB Sweetpea's purported Sequel Rights; and

(3)    Solomon issued statements and gave interviews to the trade press representing that he had partnered with WB and was the producer of a "tentpole" *D&D* motion picture based on the *Chainmail* script that was in advanced stages of development.

### CLAIMS 2, 3 and 4:  Trademark Claims

Hasbro alleges that, in light of the reversion of the Sequel Rights (*see* Claim 5 below), Sweetpea infringed Hasbro's *D&D* Trademark.  There are no genuine disputes

of material fact concerning the majority of the elements of Hasbro's three trademark claims.

*First*, as to ownership of the mark (an element of all three trademark claims), Sweetpea does not contest that the *D&D* Trademark is federally-registered and owned by Hasbro.  In addition, Hasbro representatives will testify regarding Hasbro's ownership and registration of the *D&D* Trademark.  Trial exhibits will include the relevant trademark registrations and the documents demonstrating Hasbro's chain of title to the registered mark.

*Second*, as to likelihood of confusion (Claims 2 & 3), provided that Hasbro prevails on its declaratory judgment claim that the Sequel Rights reverted, Hasbro will have established, as a matter of law, that any continued use of the *D&D* Trademark by Sweetpea in connection with its exercise of the reverted Sequel Rights (*i.e.*, by producing or authorizing the production of a new theatrical or non-theatrical *D&D* motion picture) would likely cause consumer confusion.[2]

*Third*, Sweetpea has stipulated that the *D&D* Trademark is famous and that any unauthorized use of the *D&D* Trademark by Sweetpea occurred after the mark became famous (Claim 4).

---

[2] *See* 4 McCarthy on Trademarks and Unfair Competition § 25:31 (4th ed.) ("In sum, the law is simple.  If, as a matter of contract law, a service mark or trademark license has ended, the licensee has no right to continue use of the licensed mark. Any such use is without the trademark owner's consent and constitutes infringement.") (citing *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F. Supp. 2d 914, 922 (C.D. Ill. 2000) ("The likelihood of confusion exists as a matter of law if a licensee continues to use marks owned by the licensor after termination of the license.")); *see also Church of Scientology Int'l v. Elmira Mission of Church of Scientology,* 794 F.2d 38, 44 (2d Cir. 1986); *Robert Trent Jones II, Inc. v. GFSI, Inc.*, 537 F. Supp. 2d 1061, 1065 (N.D. Cal. 2008); *Sun Microsystems v. Microsoft Corp.,* 999 F. Supp. 1301, 1311 (N.D. Cal. 1998); *Paisa, Inc. v. N & G Auto, Inc.,* 928 F. Supp. 1009, 1012 n. 4 (C.D.Cal.1996); *Hollywood Athletic Club Licensing Corp. v. GHAC-CityWalk*, 938 F. Supp. 612, 614 (C.D. Cal. 1996).

*Fourth*, unauthorized commercial use of the identical and famous *D&D* Trademark by Sweetpea constitutes sufficient evidence, as a matter of law, to establish the element of actual dilution (Claim 4).[3]

Thus, the only genuine dispute of material fact on all three of Hasbro's trademark claims is whether, after the Sequel Rights reverted to Hasbro, Sweetpea used the *D&D* Trademark in commerce.  Evidence of this element will include testimony and documents showing that Sweetpea offered to sell to WB, for many millions of dollars, the right to use the *D&D* Trademark in the primary title of a theatrical motion picture.[4]  In addition, the evidence will show that, after closing its rights deal with WB, Sweetpea used the *D&D* Trademark in commerce in its promotion of the upcoming *D&D* motion picture, including on press releases, statements to the trade press, in public recorded interviews and in posts on the Internet.

## CLAIM 5: Declaratory Judgment

Hasbro seeks a declaration from the Court that the Sequel Rights reverted to Hasbro pursuant to the Agreement because Sweetpea failed to exercise the Sequel Rights within the time period specified in the Agreement.

To prove that the Sequel Rights reverted, Hasbro will rely on two bodies of evidence.

*First*, Hasbro will present evidence that the Agreement, and in particular the "First Amendment" to the initial license agreement between the parties (the "License Agreement"), required Sweetpea to meet certain conditions within a specified time period in order to prevent the Sequel Rights from reverting to Hasbro.  Specifically, Hasbro will

---

[3] *See Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1036 (9th Cir. 2007) (owner of famous trademark "need only provide circumstantial evidence" that secondary user "diluted its famous trademark," and "use of an identical mark is itself circumstantial evidence").

[4] *See Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1312 (9th Cir. 1997) ("naked offer" to sell goods which infringe trademark may constitute infringement regardless whether defendant is in possession of counterfeit goods at time of sale).

demonstrate that, pursuant to the Agreement, Sweetpea was required to timely exercise its Sequel Rights by meeting three conditions: (1) commencing principal photography of a "theatrical" or "non-theatrical" (*not* a television) motion picture; (2) paying the applicable theatrical or non-theatrical (*not* television) rights payment prior to the commencement of principal photography; and (3) producing a "sequel," "prequel" or "remake" "based upon the Picture, the Picture Creations and the Property," as those terms are defined in the License Agreement.

Hasbro will submit evidence that the plain language and structure of the Agreement, the parties' intent, the parties' performance, and established custom and practice in the motion picture entertainment industry support its interpretation of the Agreement and the fact the Agreement includes these reversion conditions/triggers. Evidence will include the Agreement itself; correspondence and draft agreements reflecting the negotiation of the Agreement; the testimony of Lee Rosenbaum, Esq., (counsel for TSR, Inc., Hasbro's predecessor, in the negotiation of the First Amendment) as to the intentions of the parties in entering into the Agreement; expert testimony of Roger Toll, Esq., former head of legal affairs for Sony/Columbia Pictures, concerning custom and practice in the motion picture entertainment industry; and documents and testimony from Sweetpea and Sweetpea's production partner Silver Pictures demonstrating their acknowledgement and understanding of these reversion conditions/triggers.

*Second*, Hasbro will proffer testimonial and documentary evidence that Sweetpea failed to meet any of the reversion conditions specified above.  Specifically, Hasbro' evidence will demonstrate:

- Sweetpea had to exercise its Sequel Rights by October 8, 2010 – five years from the U.S. release of the prior motion picture –or the rights would revert to Hasbro. The evidence, including license agreements, email communications, deposition testimony (admissions) by Sweetpea and trial testimony by Sweetpea and its

production partner, Silver Pictures, will show that Sweetpea and Silver Pictures were aware of this deadline.

- Sweetpea failed to commence principal photography of any "theatrical" or "non-theatrical" motion picture by the October 8, 2010 deadline.  The evidence will show that, on October 1, 2010, principal photography was commenced on a *television* motion picture entitled *Book of Vile Darkness* ("*BVD*") and that, on October 7, 2010, Sweetpea exercised its television rights and failed to exercise its Sequel Rights.  Evidence of this fact will include an October 7, 2010 wire transfer form produced by Silver Pictures, which shows that Silver Pictures remitted $20,000 to Hasbro in connection with *BVD*, with the notation: "Dungeons & Dragons, Passive Royalty due per 11.d of March 19, 1998 Agreement" (referring to Paragraph 11(d) of the First Amendment, which sets forth the rights payment for *television* movies of the week).  Moreover, the evidence, including email communications and agreements between Sweetpea and NBCUniversal, will show that *BVD* was produced to be a television "movie of the week" for Syfy, and that is exactly what happened.

- Sweetpea failed to pay Hasbro the required non-theatrical payment (at least $166,667) prior to (or even after) the commencement of principal photography of *BVD* on October 1, 2010.  The evidence, including email communications, deposition testimony (admissions) by Sweetpea and trial testimony by Sweetpea and Silver Pictures, will show that both Sweetpea and Silver Pictures were aware and expressly discussed that this payment needed to be made, but nevertheless decided to pay the much smaller *television* rights payment in order to avoid paying the money to Hasbro.  As stated above, the only payment made by Sweetpea (via Silver Pictures) in connection with *BVD* was the $20,000 wire transfer expressly made in exercise of Sweetpea's television rights, rather than its Sequel Rights.

- *BVD* was not a "sequel" or "remake" "based on the Picture, the Picture Creations and the Property."  The evidence, including the motion pictures produced by

---

Sweetpea, will show that *BVD* does not contain a single character, storyline, setting or event from the original motion picture produced by Sweetpea.

### SWEETPEA'S AFFIRMATIVE DEFENSES AND COUNTERCLAIM:

### A.      Affirmative Defenses

Sweetpea will assert the following three affirmative defenses as to all of Hasbro's claims.

**Waiver:**  Hasbro waived its right to claim that *Dungeons & Dragons: Wrath of the Dragon God* and *Dungeons & Dragons: The Book of Vile Darkness* were not sequels, prequels or remakes of *Dungeons & Dragons* prior to and during production of those motion pictures.

**Elements of Waiver:**  The elements of Sweetpea's affirmative defense of waiver are:

1.      That Hasbro knew of the factual basis for its claims against Sweetpea based on the theory that *Dungeons & Dragons: Wrath of the Dragon God* and *Dungeons & Dragons: The Book of Vile Darkness* were not sequel, prequels or remakes of *Dungeons & Dragons*, or any other reversion claim, prior to and during production of those motion pictures; and

2.      That Hasbro freely and knowingly allowed Sweetpea to proceed with production and release of those motion pictures.

*See* CACI 336.

**Equitable Estoppel:**

1.      That Hasbro was apprised of the details of the production and distribution plan with respect to *Dungeons & Dragons: Wrath of the Dragon God* and *Dungeons & Dragons: The Book of Vile Darkness*;

2.      That Hasbro intended for Sweetpea to act upon Hasbro's approval of the script, production and distribution plan with respect to *Dungeons & Dragons: Wrath of the Dragon God* and *Dungeons & Dragons: The Book of Vile Darkness*;

---

3.     That Sweetpea was ignorant that Hasbro had a basis for arguing that *Dungeons & Dragons: Wrath of the Dragon God* or *Dungeons & Dragons: The Book of Vile Darkness* was not a sequel, prequel or remake of *Dungeons & Dragons*, or any other reversion claim; and

4.     That Sweetpea relied on Hasbro's conduct to its injury.

*See City of Long Beach v. Mansell*, 3 Cal. 3d 462, 489 (1970) ("'Generally speaking, four elements must be present ...: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.'").

**Laches:**

1.     That Hasbro unreasonably delayed in asserting its rights; and

2.     That Sweetpea suffered prejudice.

*See Hozie v. The Vessel HIGHLAND LIGHT*, CV 97-4199 ABC BQRX, 1998 WL 938587 (C.D. Cal. Jun. 1, 1998) *aff'd sub nom. Hozie v. Vessel Highland Light*, 182 F.3d 925 (9th Cir. 1999) ("[F]or laches to bar a claim the court must find: (1) unreasonable delay; and (2) prejudice.") (citing *In re Marriage of Plescia*, 59 Cal. App. 4th 252, 256 (1997), superseded on other grounds in *In re Marriage of Fellows*, 39 Cal. 4th 179, 185 (2006)).

**B.     Key Evidence Regarding Sweetpea's Affirmative Defenses**

In brief, the key evidence Sweetpea intends to rely on for its affirmative defenses includes:

**Waiver:**

- Hasbro's conduct and statements to Sweetpea and Silver Pictures during prior to and during production of *Dungeons & Dragons: Wrath of the Dragon God*, including approval of the script and production.

- Hasbro's conduct and statements to Sweetpea and Silver Pictures during prior to and during production of *Dungeons & Dragons: The Book of Vile*

---

*Darkness*, including approval of the script and production, and its knowledge that the motion picture would be released direct to DVD.

- Hasbro's conduct with respect to Sweetpea and other third parties.

**Equitable Estoppel:**

- Hasbro's conduct and statements to Sweetpea and Silver Pictures during prior to and during production of *Dungeons & Dragons: Wrath of the Dragon God*, including approval of the script and production.

- Hasbro's conduct and statements to Sweetpea and Silver Pictures during prior to and during production of *Dungeons & Dragons: The Book of Vile Darkness*, including approval of the script and production, and its knowledge that the motion picture would be released direct to DVD.

- Hasbro's conduct with respect to Sweetpea and other third parties.

**Laches:**

- Hasbro's conduct and statements to Sweetpea and Silver Pictures during prior to and during production of *Dungeons & Dragons: Wrath of the Dragon God*, including approval of the script and production.

- Hasbro's conduct and statements to Sweetpea and Silver Pictures during prior to and during production of *Dungeons & Dragons: The Book of Vile Darkness*, including approval of the script and production, and its knowledge that the motion picture would be released direct to DVD.

- Hasbro's delay in analyzing Hasbro's and Sweetpea's rights under the License Agreement.

- Hasbro's conduct with respect to Sweetpea and other third parties.

**C.   <u>Counterclaim and Elements</u>**

Sweetpea will pursue the following counterclaim against Hasbro:

**COUNTERCLAIM 5:**  Sweetpea seeks a declaration from this Court that:

(a)     Sweetpea has the sole, exclusive right to make a live-action motion picture using the Property;

(b)     Sweetpea has the sole, exclusive right to make a Sequel;

(c)     Sweetpea has the Right of First Negotiation / Last Refusal with respect to the Universal Film Project—*i.e.*, the right to make a Dungeons & Dragons sequel on the same financial terms that Hasbro and/or Wizards have agreed to with Universal;

(d)     Hasbro is prohibited from using, and prohibited from permitting any third party to use, the words "Dungeons & Dragons" and/or "Advanced Dungeons & Dragons" as a primary title in a live-action motion picture;

(e)     Hasbro is prohibited from permitting any third party to use the words "Dungeons & Dragons" as a secondary title in a live-action motion picture;

(f)     Hasbro is required to cooperate with Sweetpea so as to minimize the competitive impact of the Universal Film Project on any of Sweetpea's motion pictures;

(g)     Hasbro's Picture Creations have not reverted; and

(h)     Sweetpea's title rights have not reverted to Hasbro.

**ELEMENTS:**  The elements of Sweetpea's fifth claim seeking a declaratory judgment are:

(1)     an actual and substantial controversy has arisen, and now exists, between Sweetpea and Hasbro as to the matters above;

(2)     Sweetpea and Hasbro have adverse legal interests;

(3)     the controversy between Sweetpea and Hasbro is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment;

(4)     the parties desire a judicial determination as to the matters above; and

(5)     a judicial declaration is necessary and appropriate in order to set at rest the respective rights and obligations of the parties.

---

### D.      Key Evidence Regarding Sweetpea's Counterclaim

In brief, the key evidence Sweetpea intends to rely on for its counterclaim includes:

### COUNTERCLAIM 5:  Declaratory Judgment

- Agreement
- First Amendment
- Second Amendment
- Agreement exchanged between Hasbro and Universal on or around May 16, 2013 (the "Hasbro / Universal Agreement")
- Course of conduct between the parties, including correspondence and documentation
- Course of conduct between Hasbro and third parties, including correspondence and documentation
- Witness testimony
- Evidence of Custom and Practice in the Entertainment industry
- On December 8, 2000, Sweetpea released a Picture entitled "Dungeons & Dragons" in theaters in the United States;
- On October 8, 2005, a motion picture entitled "Dungeons & Dragons: Wrath of the Dragon God" ("D&D 2") aired on television in the United States on Syfy (f/k/a Sci-Fi Channel);
- On August 9, 2012, D&D 3 was released direct to DVD in the UK;
- On November 24, 2012, a motion picture entitled "Dungeons & Dragons: The Book of Vile Darkness" ("D&D 3") aired on television in the United States on Syfy;
- Sweetpea paid Hasbro a licensing payment for D&D 2 as a non-theatrical release; Hasbro did not object to this classification;
- Hasbro approved the script for D&D2; and
- Hasbro approved the script for D&D3.

### E.   Sweetpea's Defenses Regarding Hasbro's Claims

In brief, Sweetpea will assert the following defenses to claims alleged against it by Hasbro:

**CLAIM 1:  Copyright**

- That Sweetpea did not induce, cause or materially contribute to WB's infringing conduct.

**CLAIMS 2, 3 and 4:  Trademark**

- That Sweetpea did not use the *D&D* Trademark in commerce without Hasbro's authorization.

**CLAIM 5:  Declaratory Relief**

- That the Sequel Rights did not revert to Hasbro pursuant to the Agreement.

### F.   Key Evidence Regarding Sweetpea's Defenses

In brief, the key evidence Sweetpea intends to rely on for its defenses to Hasbro's claims includes:

**CLAIM 1:  Copyright**

- In October 2012, Warner Bros. Pictures ("WB") approached Hasbro to obtain rights necessary to produce a D&D movie based on an existing script entitled "Chainmail" (the "Chainmail script").
- Sweetpea did not write the Chainmail script, did not create any written work based on Chainmail, has not developed Chainmail into a movie, and did not authorize WB to author Chainmail or develop Chainmail into a movie.
- The Chainmail script was written without any input and sent to Sweetpea after it was first shopped to Hasbro.
- David Leslie Johnson wrote the Chainmail script.
- Hasbro did not reach an agreement with WB to produce a D&D movie based on the Chainmail Script in its original form.

---

FINAL PRETRIAL CONFERENCE ORDER

15

- Sweetpea did not greenlight a WB movie based on the Chainmail script, nor did Sweetpea authorized WB to greenlight a movie based on the Chainmail script.

- Courtney Solomon never edited the Chainmail script, made any notes or annotations to the script, or wrote anything down in connection with the script.

- Sweetpea did not create any visuals or mood boards with respect to Chainmail, nor did Sweetpea authorized WB to do so.

- On December 7, 2012 Courtney Solomon read the Chainmail script while he was in an editing bay in Atlanta Georgia editing the Movie Getaway.

- Witness testimony

**CLAIMS 2, 3 and 4:  Trademark**

- *See* evidence regarding Sweetpea's Counterclaim 5 for Declaratory Judgment (*supra*).

**CLAIM 5:  Declaratory Relief**

- Same evidence as above; and

- that Sweetpea did not use any Hasbro-owned mark in commerce; and

- that Sweetpea's title rights have not reverted to Hasbro.


**HASBRO'S AFFIRMATIVE DEFENSES TO COUNTERCLAIM**

**A.    Waiver**

Summary:  Hasbro claims that it did not have to offer Sweetpea an opportunity to produce the Universal Film Project on the same financial terms (or, a "Right of First Negotiation/Last Refusal"), under paragraph 2(k) of the License Agreement because Sweetpea gave up its right to have Hasbro perform this obligation when the parties executed the First Amendment.

Elements:  To succeed, Hasbro must prove both of the following by clear and convincing evidence:

(1)    That, pursuant to the License Agreement, Sweetpea knew Hasbro had an obligation to honor Sweetpea's Right of First Negotiation/Last Refusal; and

(2)    That, by entering into the First Amendment to the License Agreement, Sweetpea freely and knowingly gave up its Right of First Negotiation/Last Refusal.

Evidence:  Testimony and documents relating to execution of First Amendment.

## B.    **Failure of Conditions Precedent**

Summary:  Hasbro claims that Sweetpea's Right of First Negotiation/Last Refusal, if it still exists, did not arise in connection with the Universal Film Project because that right arises only if, and when, Hasbro desires to make a sequel or remake based upon the property rights granted to Sweetpea under the License Agreement.  Hasbro contends that this condition did not occur and that Hasbro was not required to negotiate with Sweetpea.

Elements:  To overcome this contention, Sweetpea must prove that Hasbro desired to make a sequel or remake based upon the property rights granted to Sweetpea under the License Agreement.

Evidence:  The plain language of the License Agreement; documents and testimony demonstrating that Hasbro has not authorized and is not authorizing Universal to produce a sequel or remake based on the property rights granted to Sweetpea under the License Agreement.

Summary:  In addition, the parties agreed in the Agreement that Hasbro's duty to cooperate pursuant to paragraphs 4(c) of the License Agreement and 14(d) of the First Amendment does not arise unless, and until, Hasbro or its licensee first exploits Hasbro's reserved rights under the license agreement (*e.g.*, by promoting publicly or distributing a motion picture based on Hasbro's reserved rights).  Hasbro contends that this condition did not occur and that Hasbro was not yet required to cooperate with Sweetpea.

Elements:  To overcome this contention, Sweetpea must prove that Hasbro or its licensee exploited Hasbro's reserved rights under the license agreement.

---

Evidence:  The plain language of the License Agreement; documents and testimony demonstrating that neither Hasbro nor its licensee has exploited Hasbro's reserved rights under the License Agreement by, *inter alia*, promoting publicly or distributing a motion picture based on Hasbro's reserved rights.

### C.   **Unclean Hands**

Summary:  Hasbro claims that Sweetpea is not entitled to the declaratory relief it seeks on any or any other equitable relief because Sweetpea is tainted with inequitableness and bad faith.  Sweetpea squandered its rights under the Agreement by failing to exercise good faith and diligence in producing motion pictures based on Hasbro's intellectual property.

Elements:  To succeed, Hasbro must prove that Sweeptea acted inequitably or in bad faith as to issues relating to Sweetpea's claim for equitable relief.[5]

Evidence:  Testimony and documents relating to Sweetsea's lack of good faith and diligence in producing motion pictures based on Hasbro's intellectual property.

### 8.   **ISSUES REMAINING FOR TRIAL**

In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried:

### **HASBRO:**

**HASBRO'S CLAIM 1:**

- Whether Sweetpea induced, caused or materially contributed to WB's infringing conduct.

**HASBRO'S CLAIMS 2, 3 and 4:**

- Whether Sweetpea used the *D&D* Trademark in commerce without Hasbro's authorization.

---

[5] *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002) ("The unclean hands doctrine closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief. . . . The party must have acted fairly and without fraud or deceit as to the controversy in issue.").

**HASBRO'S CLAIM 5:**

- Whether the Sequel Rights reverted to Hasbro pursuant to the Agreement.

**As to Sweetpea's Counterclaim:**

**AS TO SWEETPEA'S COUNTERCLAIM 5:**

**[Tracking elements (a) through (g) above in Sweetpea's Counterclaim 5]**

(a) Whether Sweetpea's Sequel Rights reverted and, if the Sequel Rights did revert, whether Sweetpea (and not Hasbro, by operation of the reversion) retains the sole, exclusive right to make a live-action motion picture using the Property;

(b) Whether Sweetpea's Sequel Rights reverted;

(c) Whether Sweetpea's Right of Last Refusal was satisfied and superseded by the execution of the First Amendment, which gave Sweetpea an outright grant of Sequel Rights and television rights subject to specific reversion clauses;

(d) Whether Sweetpea's Sequel Rights reverted and, if the Sequel Rights did revert, whether Hasbro obtained, by operation of the reversion, rights to use the words "Dungeons & Dragons" or "Advanced Dungeons & Dragons" as a primary title in a live-action motion picture;

(e) Whether the Agreement prohibits Hasbro from licensing third parties the right to use the words "Dungeons & Dragons" or "Advanced Dungeons & Dragons" as a secondary title in a live-action motion picture ("Secondary Title Rights"), even though Hasbro expressly reserved the Secondary Title Rights for its own use and exploitation under the Agreement;

(f) Whether Hasbro is required to cooperate with Sweetpea so as to minimize the competitive impact of the Universal Film Project on any of Sweetpea's motion pictures;

(g) What rights in the Property, if any, are held by Sweetpea by reason of its ownership of the Picture Creations;

(h)    Whether, if the Sequel Rights reverted to Hasbro, Sweetpea's title rights reverted along with them; and

(i)    Whether Sweetpea is not entitled to the declaratory relief it seeks or any other equitable relief because Sweetpea is tainted with inequitableness and bad faith.

**SWEETPEA:**

**As to Hasbro's Claim 1:**

- Whether Sweetpea had knowledge of WB's infringing conduct at the time or prior to the alleged infringement;

- Whether Sweetpea induced, caused or materially contributed to WB's infringing conduct; and

- Whether Hasbro was harmed and/or is entitled to statutory damages.

**As to Hasbro's Claims 2, 3 and 4:**

- Whether Sweetpea used a *D&D* Trademark in commerce without Hasbro's authorization;

- If so, what such D&D Trademark Sweetpea used;

- Whether such mark was used in interstate commerce in connection with the "sale, offering for sale, distribution, or advertising of any goods or services"; and

- Whether Hasbro was harmed and/or is entitled to statutory damages.


**As to Sweatpea's Counterclaim:**

**COUNTERCLAIM 5:**

- Whether Sweetpea has the sole, exclusive right to make a live-action motion picture using the Property;

- Whether Sweetpea has the sole, exclusive right to make a Sequel;

- Whether Sweetpea has the Right of First Negotiation / Last Refusal with respect to the Universal Film Project—*i.e.*, the right to make a Dungeons &

Dragons sequel on the same financial terms that Hasbro and/or Wizards have agreed to with Universal;

- Whether Hasbro is prohibited from using, and prohibited from permitting any third party to use, the words "Dungeons & Dragons" and/or "Advanced Dungeons & Dragons" as a primary title in a live-action motion picture;

- Whether Hasbro is prohibited from permitting any third party to use the words "Dungeons & Dragons" as a secondary title in a live-action motion picture;

- Whether Hasbro is required to cooperate with Sweetpea so as to minimize the competitive impact of the Universal Film Project on any of Sweetpea's motion pictures;

- Whether Hasbro's Picture Creations have reverted; and

- Whether Sweetpea's title rights have reverted to Hasbro.

## 9.   STATUS OF DISCOVERY

Document discovery is complete and depositions of substantially all fact witnesses have been completed.  Hasbro has subpoenaed and intends to take the pre-trial deposition of one fact witness, a former attorney for Sweetpea, who was identified for the first time as a potential witness in Sweetpea's pre-trial witness list.  Sweetpea will oppose the taking of this deposition because the witness was not subpoenaed prior to the discovery cutoff date.  In addition, the parties agreed to conduct any expert depositions and exchange any documents relied upon by their experts in advance trial.

## 10.   EXHIBIT LISTS

The Joint Exhibit List of the parties has been filed under separate cover as required by L.R. 16-6.1.  The Pre-Trial Exhibit Stipulation has been filed under separate cover as required by Paragraph V.D of the Court's Scheduling and Case Management Order for Jury Trial dated September 5, 2013.  Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits to which objections have been made in the Pre-Trial Exhibit Stipulation.

## 11.   **WITNESS LISTS**

Pursuant to L.R. 16-5, witness lists of the parties have been filed with the Court.

Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment or rebuttal).

Each party intending to present evidence by way of deposition testimony will mark such depositions in accordance with L.R. 16-2.7.  For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

**Hasbro Deposition Designations:**

Deposition of Courtney Solomon and Sweetpea (by 30(b)(6))

Deposition of Steve Richards and Silver Pictures (by 30(b)(6))

**Sweetpea Deposition Designations:**

Deposition of James Wyatt

Deposition of Michael Eisner and Hasbro (by 30(b)(6))

Deposition of Bennett Schneir

Deposition of Lee Rosenbaum

**Objections:**

Hasbro objects to the presentation of testimony by deposition of the following witnesses:

Deposition of Lee Rosenbaum, who is not a party to this action.

Sweetpea objects to the presentation of testimony by deposition of the following witnesses:  Deposition of Steve Richards and Silver Pictures (by 30(b)(6)).  Neither Mr. Richards nor Silver Picture are parties to this action.

## 12.   **PENDING MOTIONS**

There are no pending law and motion matters or motions *in limine*.

## 13.   **BIFUCATED ISSUES**

The trial will not be bifurcated.

1

**14.    <u>CONCLUSION</u>**

2

The foregoing admissions having been made by the parties, and the parties

3

having specified the foregoing issues remaining to be litigated, this Final Pretrial

4

Conference Order shall supersede the pleadings and govern the course of the trial of

5

this cause, unless modified to prevent manifest injustice.

6

7

DATED:  _March 24, 2014

8

_____

9

DOLLY M. GEE
United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

FINAL PRETRIAL CONFERENCE ORDER

23