Patricia L. Glaser, SBN 55668
  pglaser@glaserweil.com
G. Jill Basinger, SBN 195739
  jbasinger@glaserweil.com
David Sergenian, SBN 230174
  dsergenian@glaserweil.com
GLASER WEIL FINK HOWARD AVCHEN
  & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA  90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

Christopher G. Caldwell, SBN 106790
  caldwell@caldwell-leslie.com
Linda M. Burrow, SBN 194668
  burrow@caldwell-leslie.com
CALDWELL LESLIE & PROCTOR, PC
725 South Figueroa, 31st Floor
Los Angeles, CA 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for Defendant
*SWEETPEA ENTERTAINMENT, INC.*
*and Defendant/Counter-Claimant*
*SWEETPEA B.V.I. LTD.*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| HASBRO, INC., *et al.*, | CASE NO.  13–CV–03406–DMG (JCGx) |
| Plaintiffs, | **DECLARATION OF JUN OH PURSUANT TO LOCAL RULE 43-1** |
| v. | Trial Date:  September 16, 2014 |
| SWEETPEA ENTERTAINMENT, INC., *et al.*, | Time:  8:30 a.m.<br>Ctrm:  7 |
| Defendants. | |
| AND RELATED COUNTERCLAIM. | |

1

924622

# DECLARATION OF JUN OH

I, JUN OH, declare as follows:

1.      I have been employed by Warner Bros. Pictures ("Warner Bros.") since 2007 as a motion picture business affairs executive and currently hold the title of Senior Vice President, Business Affairs.  Prior to joining Warner Bros. I worked for the law firm of Pillsbury, Madison & Sutro, Walt Disney Pictures and Beacon Pictures.  I am a lawyer, admitted to practice before the Supreme Court of California. I have personal knowledge of the facts stated in this declaration and if called upon as a witness would testify truthfully to them.

2.      I am the executive at Warner Bros. responsible for day-to-day business affairs in connection with a potential theatrical motion picture project known as *Chainmail*.  As a business affairs executive, my role is to negotiate deals relating to the project, including for underlying rights, for writers and, if it appears that the project will proceed to production, for talent, such as producers, actors and directors.

3.      I became involved with the *Chainmail* project in late September 2012, when it was assigned to me by my immediate superior, Patti Connolly, Executive Vice President of Business Affairs for Warner Bros. Pictures.  Ms. Connolly provided me with contact information for Bennett Schneir, the lead creative executive for feature films at Hasbro.  My understanding at the time was that I was to contact Mr. Schneir regarding whether Hasbro had rights in the Dungeons & Dragons property that, if they were granted to Warner Bros., would allow us to proceed with our *Chainmail* project.

4.      My initial contact with Mr. Schneir was by telephone on September 24, 2012.  It is my usual practice to take notes of business-related telephone conversations, using a form titled "Note to File."  A true and correct copy of the notes of my initial conversation with Mr. Schneir is attached hereto as **Trial Exhibit 190**. As indicated by my notes, in response to my inquiry regarding whether Hasbro held rights to Dungeons & Dragons, Mr. Schneir advised that the rights were

924622

"complicated" and that he would need to "find out what exactly the status [was] on the rights." Mr. Schneir said that he would get back to me within a few days regarding the exact status of the film rights.

5.      Later in the day on September 24, 2012, I reported on my conversation with Mr. Schneir in an email I sent to Ms. Connolly and a number of Warner Bros. executives. I advised that Mr. Schneir had "mentioned that the rights were more complicated than the previous emails indicated" and that he would "get back to me in a day or two about the exact status of the film rights." A true and correct copy of my September 24, 2012 email is attached hereto as **Trial Exhibit 189**.

6.      I spoke again with Mr. Schneir by telephone on September 28, 2012. Mr. Schneir started the conversation by advising that the rights on Dungeons & Dragons were "tricky" and that Hasbro held certain theatrical film rights, but not others. He told me that one of the prior owners of the Dungeons & Dragons rights had made a deal with another party and that as a result, there were certain areas of the property that Hasbro could not exploit. Mr. Schneir assured me, however, that these non-exploitable areas of the property were not what the core Dungeons & Dragons fan base was interested in. When I asked Mr. Schneir to provide me with some specifics regarding Dungeons & Dragons and rights Hasbro did not control, he responded that Hasbro would need to have a conversation with Warner Bros. regarding the creative direction that Warner Bros. was interested in taking before he could determine whether the rights Warner Bros. wanted to acquire from Hasbro were clear. Mr. Schneir also advised me that Hasbro's rights in the title "Dungeons & Dragons" were non-exclusive and, moreover, that the title could only be used in connection with a qualifier. A true and correct copy of my notes of the September 28, 2012 conversation with Mr. Schneir is attached hereto as **Trial Exhibit 192**.

7.      Following my telephone call with Mr. Schneir, I sent an email to Warner Bros. creative executives Greg Silverman and Jon Berg summarizing my conversation with Mr. Schneir. In that email I indicated that Mr. Schneir had advised that "Hasbro

3

owns and controls most film rights, but not all" and that Hasbro's rights in the title were non-exclusive.  A true and correct copy of my September 28, 2014 email is attached hereto as **Trial Exhibit 191**.

8.     Throughout October 2012, I made a number of attempts to get further clarity regarding the Dungeons & Dragons theatrical film rights Hasbro controlled, and those rights it did not control.  Hasbro, however, continued to stall on the issue. On October 29, 2012, I spoke by telephone with Rob Carlson and June Horton, Hasbro's agent and business affairs representative at William Morris Endeavor ("WME").  They advised me that Hasbro "was still working out the rights issues." True and correct copies of an email I sent to Mr. Silverman and Mr. Berg later that day reporting on that conversation is attached hereto as **Trial Exhibit 541.**

9.     On November 1, 2012, I spoke again by telephone with Mr. Carlson and Ms. Horton of WME, who were joined by Michael Eisner, head of legal and business affairs at Hasbro.  They advised me of further restrictions on Hasbro's rights in the title "Dungeons & Dragons" for feature films.  While Mr. Schneir had previously advised me that Hasbro had the rights to the title "Dungeons & Dragons" so long as it was used with another phrase, Mr. Eisner now told me that the other "phrase" had to be the main title of the film and that "Dungeons & Dragons" could only be used as a sub-title that was at most 50% of the size of the main title of the film.  Mr. Eisner and Ms. Horton also advised me that the other rights holder was someone named Courtney Solomon, whom I came to learn was the principal of a company named Sweetpea.  A true and correct copy of my notes of this conversation (in which I mistakenly refer to Ms. Horton as "June Martin") is attached hereto as **Trial Exhibit 201**.

10.     I was becoming increasingly concerned that Hasbro did not control the rights in Dungeons & Dragons that Warner Bros. needed in order to make *Chainmail*. Consequently, on November 7, 2012, I sent an email to Mr. Eisner at Hasbro asking that he "please provide us with a detailed explanation of the breadth of rights the

DECLARATION OF JUN OH

924622

1    other party has in connection with the Dungeons & Dragons property."  A true and

2    correct copy of my November 7, 2012 email is attached hereto as **Trial Exhibit 210**.

3    I never received a response to this request.

4         11.    On November 15, 2012, I received a call from Rob Carlson at WME who

5    advised me that Hasbro intended to close a deal for Dungeons & Dragons with

6    Universal Pictures.  Although I had been told by Mr. Berg that Hasbro had initially

7    indicated that it liked the *Chainmail* script, Mr. Carlson told me that because the

8    script contained "much older D&D [Dungeons & Dragons] IP" Hasbro had decided

9    that it wanted to "start from scratch."  Based on Hasbro's persistent unwillingness in

10   my prior discussions with Mr. Schneir, Mr. Carlson and others to delineate the

11   theatrical motion picture rights it held in the Dungeons & Dragons property, I

12   interpreted Mr. Carlson's statement to mean that Hasbro did not actually own motion

13   picture rights in what it referred to as the "old" Dungeons & Dragons intellectual

14   property, which formed the foundation for Warner Bros.'s *Chainmail* script.  I

15   subsequently learned that there were two sets of Dungeons & Dragons rights:

16   "Original" and "Advanced", which includes the "Forgotten Realms" setting, and that

17   Hasbro did not have the motion picture rights to the "Original" Dungeons & Dragons

18   property.  True and correct copies of my notes of this conversation, as well as an

19   email I sent that same day to Greg Silverman and Jon Berg summarizing its contents,

20   are attached hereto as **Trial Exhibit 223** and **Trial Exhibit 221.**

21        12.    After Warner Bros. failed to reach a deal with Hasbro over rights to

22   Dungeons & Dragons, I had several discussions with Mr. Silverman, Mr. Berg, Mr.

23   Spira and Ms. Connelly in which we shared our belief that Hasbro did not actually

24   own the motion picture rights necessary to allow Warner Bros. to produce *Chainmail*.

25   I was therefore instructed by Mr. Spira to approach Mr. Solomon, who we believed

26   might hold those rights.  On or about November 30, 2012, I received an email from

27   Mr. Berg forwarding an email he received from a producer named Mark Canton,

28   forwarding an email from Mr. Solomon confirming that the Dungeons & Dragons

rights were owned by Mr. Solomon's company, Sweetpea B.V.I., Ltd. Over the next several months, I engaged in negotiations with Sweetpea's counsel, Ralph Brescia, and others for theatrical motion picture rights in the Dungeons & Dragons property. On April 16, 2013, Mr. Brescia and I reached an agreement in principle for Warner Bros. to acquire the rights for Warner Bros. to move ahead with producing *Chainmail*. Once this agreement in principle was reached, it would have been my normal practice to turn the deal over to a member of the legal department, in this instance Anne Braveman, to draft a long form agreement. I am aware that Ms. Braveman prepared an initial draft of that agreement and that this draft was sent to Sweetpea's counsel, as I was copied on Ms. Braveman's email enclosing this initial draft. It is my understand that Sweetpea never provided comments on this initial draft, because of this lawsuit, which was filed approximately a month after Mr. Brescia and I reached our agreement in principle.

13. On June 27, 2014, Warner Bros. entered into an agreement with Sweetpea dated as of June 13, 2014 (the "Sweetpea-WB Agreement"). I received copies of drafts of this Agreement, as well as the final executed version, a true and correct copy of which is attached hereto as **Trial Exhibit 540**, in the ordinary course of business. Under the Sweetpea-WB Agreement, Sweetpea granted and assigned to Warner Bros. all of its right, title and interest in the Dungeons & Dragons property as those rights then existed. The grant and assignment was expressly subject to any modification to the rights in the property that might occur as a result of this litigation, as set forth in Paragraph 5 of the Sweetpea-WB Agreement.

14. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed on August 25, 2014.

JUN OH

924622

## Aguilar, Yolanda

| | |
|---|---|
| **From:** | Oh, Jun |
| **Sent:** | Monday, September 24, 2012 5:16 PM |
| **To:** | Connolly, Patti; Berg, Jon; Silverman, Greg; Robinov, Jeff |
| **Cc:** | Spira, Steven |
| **Subject:** | RE: Dungeons and Dragons |

I did connect with Bennett Schneir at Hasbro, but he said he needed to get back to me in a day or two about the exact status of the film rights.  He mentioned that the rights were more complicated than the previous emails indicated.  I will give everyone an update once I hear back from him.

---

**From:** Connolly, Patti
**Sent:** Monday, September 24, 2012 5:00 PM
**To:** Berg, Jon; Silverman, Greg; Robinov, Jeff
**Cc:** Spira, Steven; Oh, Jun
**Subject:** RE: Dungeons and Dragons

Am copying Jun to find out if he has heard back from the person he called.

XXOO

---

**From:** Berg, Jon
**Sent:** Monday, September 24, 2012 4:24 PM
**To:** Silverman, Greg; Robinov, Jeff
**Cc:** Spira, Steven; Connolly, Patti
**Subject:** Dungeons and Dragons

Spoke to Lionel and emailed with Beth. Guy read D/D (or some of it) and dug it. Wants to come on to develop another draft. I'm mtg with him and Lionel next week when I return from London.

The title is important to them. Any progress on that end, PC?

Many thanks,

JB

1

CONFIDENTIAL

Oh Decl. p. 7   WB000624

**Trial Ex. 0189-0001**

Date: 9/24/12
Time: 12:37 AM/PM
Project: "Dungeons & Dragons"
Re: rights
Parties: Bennett & Schacir

**NOTE TO FILE**

① Rights are complicated

② Will find out on what exactly the status is on the rights

③ BS wanted to know who is interested on our side

CONFIDENTIAL

Trial Ex. 0190-0001

Oh Decl. p. 8    WB000745

**Aguilar, Yolanda**

| | |
|---|---|
| **From:** | Oh, Jun |
| **Sent:** | Friday, September 28, 2012 5:06 PM |
| **To:** | Silverman, Greg; Berg, Jon |
| **Cc:** | Robinov, Jeff; Spira, Steven; Connolly, Patti |
| **Subject:** | RE: Dungeons & Dragons |

I spoke with Bennett and he informed me that:

1. Hasbro owns and controls most film rights, but not all; and
2. Hasbro has the non-exclusive right to use "DUNGEONS AND DRAGONS" in the title of a film with some sort of qualifier (e.g., "DUNGEONS AND DRAGONS: THE WIZARD'S REALM").

In short, there is the possibility that a competing "DUNGEONS AND DRAGONS: (fill in the blank)" movie or TV program could be released in the same period as our picture.

Bennett would not tip his hand on what rights Hasbro did not control, but did want to have a conversation with us about what direction we wanted to go so that he could have the opportunity to see if that was clear.  Let's discuss before you guys speak with Bennett.

---

**From:** Connolly, Patti
**Sent:** Monday, September 24, 2012 5:21 PM
**To:** Oh, Jun; Berg, Jon; Silverman, Greg; Robinov, Jeff
**Cc:** Spira, Steven
**Subject:** Re: Dungeons and Dragons

If the rights are available and we make a deal, we will have the right to use the title.
xxoo

---

**From:** Oh, Jun
**To:** Connolly, Patti; Berg, Jon; Silverman, Greg; Robinov, Jeff
**Cc:** Spira, Steven
**Sent:** Mon Sep 24 17:16:24 2012
**Subject:** RE: Dungeons and Dragons

I did connect with Bennett Schneir at Hasbro, but he said he needed to get back to me in a day or two about the exact status of the film rights.  He mentioned that the rights were more complicated than the previous emails indicated.  I will give everyone an update once I hear back from him.

---

**From:** Connolly, Patti
**Sent:** Monday, September 24, 2012 5:00 PM
**To:** Berg, Jon; Silverman, Greg; Robinov, Jeff
**Cc:** Spira, Steven; Oh, Jun
**Subject:** RE: Dungeons and Dragons

Am copying Jun to find out if he has heard back from the person he called.

xxoo

1

CONFIDENTIAL

Oh Decl. p. 9          WB000603

**Trial Ex. 0191-0001**

**From:** Berg, Jon
**Sent:** Monday, September 24, 2012 4:24 PM
**To:** Silverman, Greg; Robinov, Jeff
**Cc:** Spira, Steven; Connolly, Patti
**Subject:** Dungeons and Dragons

Spoke to Lionel and emailed with Beth. Guy read D/D (or some of it) and dug it. Wants to come on to develop another draft. I'm mtg with him and Lionel next week when I return from London.

The title is important to them. Any progress on that end, PC?

Many thanks,

JB

2

CONFIDENTIAL

Oh Decl. p. 10

WB000604

**Trial Ex. 0191-0002**

Date: 9/4/12
Time: 11 : 50 AM/ PM
Project: "D 9 D"
Re: rights
Parties: B. Schneir

## NOTE TO FILE

— rights for title!
— Dungeons & Dragons?
— possibly clean up
— nt qualifier
— non-exclusive

① Rights are "tricky"

② Film rights certain rights, but not others

③ Old creators made deal w/ guy tied in w/ J. Silver

④ Certain things we can't exploit

⑤ Conversation w/ someone else or subset

⑥ Have rights to all D & D ZP
   — movie out of existing ZP
   — single version, need to know creative version
   — wants to know what we are thinking

⑦ TW Movie or Sci-Fi
   — that is not D & D to core base, not official

⑧ No single explanation control of exclusions

⑨ Idea & direction

CONFIDENTIAL

Oh Decl. p. 11   WB000744

Trial Ex. 0192-0001



Date: 11 / 1 / 12
Time: 5 : 13  AM/ PM
Project: P & D
Re: rights
Parties: R. Carlson, J. Martin
M. Eisner

**NOTE TO FILE**

① Non-excl right to use D & D title for licens as long as D & D is not greater 50% of prising artwork title.

— D & D ½ size and after

— A Wizards Journey: D & D User
— after or below

② Other person ~~may~~ use the title only
— no I.P. ➝ Courtney ~~████████~~
↳ Soloman
— happened 6-4 WOTC
— need to look @ paperwork

③ Millionents @ Paramount

④ Candleland & Rose @ Sony

⑤ $250K for 18 months

⑥ Sequel rights
— $500K ± 1% ➝ cap @ 7.5%
— $7.5M cap

⑦ WOTC approve storyline.
— get back to me

**Aguilar, Yolanda**

| | |
|---|---|
| **From:** | Oh, Jun |
| **Sent:** | Wednesday, November 07, 2012 7:18 PM |
| **To:** | Eisner, Mike |
| **Cc:** | Schneir, Bennett; 'Rob Carlson'; June Horton; Levinson, Jodi |
| **Subject:** | RE: D&D - Wizards of the Coast |

Hey Mike,

I know that we have all had numerous discussions on the topic, but could you please provide us with a detailed explanation of the breadth of rights the other party has in connection with the Dungeons and Dragons property? I'm out of town for a week, but my colleague, Jodi Levinson, will be pinch hitting for me while I'm away.

Best,

Jun

---

**From:** Eisner, Mike [mailto:Mike.Eisner@hasbro.com]
**Sent:** Friday, November 02, 2012 3:00 PM
**To:** Oh, Jun
**Cc:** Schneir, Bennett; 'Rob Carlson'; June Horton
**Subject:** D&D - Wizards of the Coast

Jun:  Further to our conversation, please see attached deal discussion memo.  Best, Mike

Mike Eisner | SVP, Business & Legal Affairs | Hasbro Studios
2950 N. Hollywood Way, Suite 100 | Burbank, CA 91505
T: (818) 478-4766 | F: (818) 478-4844 | mike.eisner@hasbro.com

1

CONFIDENTIAL

Oh Decl. p. 13     WB000567

Trial Ex. 0210-0001

**Curtin, Linda**

| | |
|---|---|
| **From:** | Oh, Jun |
| **Sent:** | Thursday, November 15, 2012 5:28 PM |
| **To:** | Berg, Jon; Spira, Steven; Silverman, Greg |
| **Cc:** | 'smoochy54@gmail.com'; Connolly, Patti; Levinson, Jodi |
| **Subject:** | RE: Hasbro |

I'm not sure what their deal at Universal is, Jodi has a call in to Universal.   Hasbro's position is that Wizards of the Coast wanted to start from scratch, and Rob will continue to tell you the same.

-----Original Message-----
From: Berg, Jon
Sent: Thursday, November 15, 2012 5:16 PM
To: Spira, Steven; Oh, Jun; Silverman, Greg
Cc: 'smoochy54@gmail.com'; Connolly, Patti; Levinson, Jodi
Subject: Re: Hasbro

Just to be clear. They closed their deal at uni and leveraged us to get gross? Jun?


----- Original Message -----
From: Spira, Steven
Sent: Thursday, November 15, 2012 05:05 PM
To: Berg, Jon; Oh, Jun; Silverman, Greg
Cc: 'smoochy54@gmail.com' <smoochy54@gmail.com>; Connolly, Patti; Levinson, Jodi
Subject: RE: Hasbro

Need to understand limitations and consider -  will make exploratory call

-----Original Message-----
From: Berg, Jon
Sent: Thursday, November 15, 2012 5:04 PM
To: Spira, Steven; Oh, Jun; Silverman, Greg
Cc: 'smoochy54@gmail.com'; Connolly, Patti; Levinson, Jodi
Subject: RE: Hasbro

I'd like.

-----Original Message-----
From: Spira, Steven
Sent: Thursday, November 15, 2012 5:03 PM
To: Berg, Jon; Oh, Jun; Silverman, Greg
Cc: 'smoochy54@gmail.com'; Connolly, Patti; Levinson, Jodi
Subject: Re: Hasbro

Should we consider (bite my tongue) pursuing the other rights ?

----- Original Message -----
From: Berg, Jon
Sent: Thursday, November 15, 2012 05:00 PM
To: Oh, Jun; Silverman, Greg
Cc: JEFF ROBINOV <smoochy54@gmail.com>; Connolly, Patti; Spira, Steven; Levinson, Jodi
Subject: RE: Hasbro

1

**EXHIBIT**
15
Oh 11/5/13

**CONFIDENTIAL**

WB001017

Oh Decl. p. 14

**Trial Ex. 0221-0001**

Son of a bitch.

-----Original Message-----
From: Oh, Jun
Sent: Thursday, November 15, 2012 4:59 PM
To: Silverman, Greg; Berg, Jon
Cc: JEFF ROBINOV; Connolly, Patti; Spira, Steven; Levinson, Jodi
Subject: RE: Hasbro

FYI, I just spoke with Rob Carlson who informed me that they are going to be closing their deal for DUNGEONS AND DRAGONS with Universal.  Rob said that Wizards of the Coast ultimately wanted to develop material from scratch, as opposed to existing material.  When pressed about the possibility of making a deal with us and also starting from scratch, he said that they were too far along with Universal and did not want to continue with our negotiations.

Rob said that he has a call into you guys (Greg and Jon) to discuss.

-----Original Message-----
From: Levinson, Jodi
Sent: Thursday, November 08, 2012 3:40 PM
To: Silverman, Greg
Cc: Berg, Jon; JEFF ROBINOV; Connolly, Patti; Oh, Jun; Spira, Steven
Subject: RE: Hasbro

Absolutely.

-----Original Message-----
From: Silverman, Greg
Sent: Thursday, November 08, 2012 3:39 PM
To: Levinson, Jodi
Cc: Berg, Jon; JEFF ROBINOV; Connolly, Patti; Oh, Jun; Spira, Steven
Subject: Re: Hasbro

Please give JR a beat to review.

(I'm learning how to type on the iPhone, please forgive the typos, awkward auto-corrects, and shorter emails.)

On Nov 8, 2012, at 3:34 PM, "Levinson, Jodi" <Jodi.Levinson@warnerbros.com> wrote:

> Got it.  Just want to make sure we are all on the same page as to what the precedent is that we will be agreeing to:
>
> RIGHTS
> 1.      Purchase price:  The initial option payment is applicable against $5M vs. 5%, with escalations.
> 2.      Subsequent productions - $500K fee increase (cap of $7.5M) and 1% increase on backend (cap of 7.5% gross) per picture.
>
> PRODUCING
> 1.      Fee:  $1M plus 5% at CB10
> 2.      Subsequent productions - $250K increase (cap of $1.5M)
> 3.      Credits:  2 producer credits (one in 1st position); 2 exec prod credits; production credit; animated logo and paid ad bug.
>
> MERCHANDISING IS RESERVED TO HASBRO, with Hasbro paying WB a royalty based on net sales.
>

2

**CONFIDENTIAL**

WB001018

Oh Decl. p. 15

Trial Ex. 0221-0002

> RESERVED RIGHTS include animated and live action TV, direct to DVD rights, stage and theme parks. Webisodes and other "new media" production rights also reserved.
>
> APPROVAL RIGHTS
> 1.      Must adhere to Style Guide
> 2.      Rating: No more restrictive than PG-13
> 3.      True approval (no WB tie-break) re producers, commercial tie ins, product placement and use of Hasbro marks
> 4.      Mutual approval over all other key elements, WB tie break
>
> SUBSEQUENT PRODUCTIONS. WB to have subsequent production rights, provided that:
> 1.      Writer is engaged within 12 months after release of preceding picture
> 2.      Commencement of principal on subsequent productions must occur within 4 years of release of preceding production
>
> In addition to the above, Hasbro has proposed the following new deal terms that do not exist in the Universal term deal. Our intention is to keep them at their precedent.
>
> 1.      True approval over story/treatment (and final screenplay must adhere thereto), director, title.
> 2.      True approval over the domestic release date (release date to be set 14 months prior to release and cannot be released within 6 months either side of a previously announced release date for any other Hasbro picture). Note that per the Universal term deal, all pictures had to be released between Easter and Labor Day.
> 3.      Co-fi right.
>
> -----Original Message-----
> From: Silverman, Greg
> Sent: Thursday, November 08, 2012 2:54 PM
> To: Levinson, Jodi; Spira, Steven
> Cc: Berg, Jon; JEFF ROBINOV
> Subject: Hasbro
>
> Spoke to JR. I believe we should close this at their precedent.
> If it makes it harder to make the movie later (in terms of the gross out), we can readdress.
> I want to close this up before uni hears we are close and tries to close their version of the d and d deal.
> (I'm learning how to type on the iPhone, please forgive the typos, awkward auto-corrects, and shorter emails.)

3

CONFIDENTIAL

WB001019

Oh Decl. p. 16

Trial Ex. 0221-0003

Date: 11 / 15 / 12
Time: 9 : 45 AM / PM
Project: "D ID"
Re: _____
Parties: R. Carlson

**NOTE TO FILE**

① WKTC

— Want to develop from scratch and not from existing script

— Script is much older ? & ? 2P & want to start from scratch idea

② Bottom line was not about deal, about starting over, always in struggle.

③ Reports was more about starting from scratch

— too far down the road w/ Universal

CONFIDENTIAL
Trial Ex. 0223-0001
WB000747

**PRIVILEGED AND CONFIDENTIAL SETTLEMENT LETTER**
**(Subject to Joint Defense, Common Interest and Settlement Privileges)**

As of June 13, 2014

SWEETPEA B.V.I., LTD.
c/o Bloom Hergott Diemer Rosenthal LaViolette
Feldman Schenkman & Goodman, LLP
150 South Rodeo Drive, Third Floor
Beverly Hills, California 90212
Attn:  Ralph Brescia, Esq.

Ladies and Gentlemen:

Reference is made to that certain unexecuted initial draft of an option purchase agreement dated as of April 18, 2013, between Warner Bros. Pictures, a division of WB Studio Enterprises Inc. ("Purchaser") and Sweetpea B.V.I., Ltd. ("Owner") in connection with the Sweetpea D&D Property, which memorializes the agreement between Purchaser and Owner and remains subject to the good faith negotiation of the parties (the "Draft").

Purchaser and Owner each acknowledge that certain disagreements and disputes between one another, some involving third parties, have arisen relating to the subject matter of the Draft, which Purchaser and Owner wish to resolve in order to avoid the uncertainty and expense of litigation by reaching a settlement and accommodation of same.

In consideration of the covenants and conditions contained in the Draft, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and notwithstanding anything contained in the Draft to the contrary, the parties hereto agree on a privileged and confidential basis as follows:

1. <u>Greenlight:</u>  A motion picture based on Owner's rights as they exist currently and/or as they may be modified pursuant to any rights-related litigation and/or settlement(s) (the "Picture"), is set for production subject only to (i) Owner's execution of this Settlement Letter and the Short Form Assignment attached hereto as Exhibit "A", (ii) Purchaser engaging the principal cast members and the director and (iii) Purchaser's approving, in its sole discretion, the budget of the Picture.  Nothing in this Paragraph 1, shall affect Paragraphs 2 and 3 below.

2. <u>Purchase Price:</u>  The Purchase Price provided for in Paragraph 2 of the Draft (i.e., four million U.S. dollars ($4,000,000)) shall be payable to Owner on a pay-or-play basis as follows: one-quarter of the Purchase Price (i.e., one million U.S. dollars ($1,000,000)) upon the earlier of commencement of principal photography of the Picture (the "Start Date") or January 12, 2015, one-quarter of the Purchase Price (i.e., one million U.S. dollars ($1,000,000)) upon June 12, 2015, one-quarter of the Purchase Price (i.e., one million U.S. dollars ($1,000,000)) upon

#233333.swb.v6(6/27/14)
Dungeons and Dragons
Settlement Letter

Oh Decl. p. 18

January 12, 2016, and one-quarter of the Purchase Price (i.e., one million U.S. dollars ($1,000,000)) upon June 12, 2016. Notwithstanding the foregoing, in the event that principal photography of the Picture is commenced at any time before complete payment of the Purchase Price has been made pursuant to the above schedule, then the remaining balance of the Purchase Price shall be payable upon commencement of principal photography of the Picture.

3. Rights-Related Litigation:

   a. Fees and Costs: In addition to the Purchase Price, Owner is pay-or-play for an additional one million U.S. dollars ($1,000,000) as reimbursement of Owner's rights-related litigation fees and costs paid to date, payable upon Owner's execution of this Settlement Letter and Exhibit "A". Purchaser shall pay Owner an additional one million U.S. dollars ($1,000,000) as reimbursement of Owner's rights-related litigation fees and costs paid to date, if a settlement is reached with Hasbro or Purchaser commences principal photography of the Picture (or Purchaser's commencement of any television or DTV production based upon the Sweetpea D&D Property), payable on the occurrence of either of those events. Purchaser shall provide Owner with all of the applicable legal invoices which substantiate these past litigation fees and costs. Such legal invoices may be redacted for attorney-client privilege.

   In addition, the parties' prospective litigation costs (from the date hereof), if any, shall be paid fifty percent (50%) by Purchaser and fifty percent (50%) by Owner, and thereafter recouped by each of Purchaser and Owner on a pari passu basis through the budget of the Picture and/or as otherwise determined by mutual agreement, upon Purchaser's receipt and review of the applicable legal invoices supporting the charges for the prospective costs. Prospective litigation costs shall include any court awarded fees and/or costs awarded to Hasbro. For the avoidance of doubt, no portion of litigation costs so reimbursed or recouped shall be applicable against or otherwise reduce the Purchase Price or any other amounts to which Owner is entitled pursuant to the Draft and/or this Settlement Letter.

   In the event that, as the result of settlement, Purchaser agrees to pay any of Hasbro's litigation costs, Purchaser and Owner agree that Owner shall not be responsible for such reimbursement and that such costs shall be recouped by Purchaser through the budget of the Picture.

   b. Mutual Approval: Purchaser and Owner shall mutually approve and control any rights-related litigation (including any settlement(s)), provided that if, following good faith efforts to agree, the parties are unable to reach a decision acceptable to both parties and have reached an impasse, then Purchaser shall have the right of final decision with respect thereto. Notwithstanding the foregoing, Purchaser's right of final decision shall not result in a material change to the Purchase Price, Owner's participation, other payments and/or any other entitlements due Owner.

    c. <u>Purchaser's Access to Information:</u>  Owner shall use commercially reasonable best efforts to amend any protective order in any rights-related litigation so as to allow Purchaser to have full access to any and all documents and/or information filed and/or exchanged in connection therewith.  Purchaser will agree to be bound by the same confidentiality provisions to which the other parties to such litigation may be bound.  Regardless of whether or not said protective order is amended, Owner shall provide Purchaser with complete access to all of Owner's files and materials relating to the Sweetpea D&D Property and/or the litigation, with appropriate redactions for any confidential information provided by Hasbro to Owner in the litigation which would otherwise be subject to a protective order.

4. <u>Representations and Warranties:</u> Owner hereby represents and warrants that there is no settlement agreement between Owner and Hasbro in connection with the Sweetpea D&D Property. Owner and Purchaser acknowledge that they have a common and mutuality of legal interest with respect to claims made by Hasbro, all of which are denied, (i) regarding rights Hasbro asserts it owns in the Sweetpea D&D Property, and (ii) that Owner and Purchaser have allegedly infringed Hasbro's asserted rights.

5. <u>Grant of Rights</u>: As of the date of Owner's execution of this Settlement Letter and Exhibit "A", Owner exclusively grants to Purchaser Owner's rights as they exist currently and/or as they may be modified by any rights-related litigation and/or settlement(s).  Subject only to Purchaser's timely payment of the full Purchase Price reflected in Paragraph 2 of this Settlement Letter, such rights will be exclusively owned by Purchaser. This Settlement Letter, shall constitute a full and binding agreement between the parties, until such time, that a long-form agreement is fully executed.

*Remainder of page intentionally left blank.*

#233333.awb.v6(6/27/14)
Dungeons and Dragons
Settlement Letter

Oh Decl. p. 20

For the avoidance of doubt, in the event that the parties do not enter into a long-form agreement and a motion picture is produced pursuant to the rights granted hereunder, the business and commercial terms of the Draft shall apply.

All capitalized terms used but not otherwise defined herein shall have the same respective meanings ascribed to them in the Draft.

Kindly indicate your agreement with and acceptance of the foregoing by signing in the spaces provided below.

Very truly yours,

WARNER BROS. PICTURES, a
division of WB Studio Enterprises
Inc. ("Purchaser")

By:

Its: GENERAL COUNSEL

ACCEPTED AND AGREED BY:

SWEETPEA B.V.I., LTD.
("Owner")

By:

Its:

Execution Date: 6 27 14

#233333.awb.v6(6/27/14)
Dungeons and Dragons
Settlement Letter

Trial Ex. 0540-0004

EXHIBIT "A"

"DUNGEONS AND DRAGONS (2013)"

### ASSIGNMENT

For valuable consideration, receipt of which is hereby acknowledged, the undersigned, SWEETPEA B.V.I., LTD. ("Sweetpea"), whose address is c/o Bloom Hergott Diemer Rosenthal LaViolette Feldman Schenkman & Goodman, LLP, 150 South Rodeo Drive, Third Floor, Beverly Hills, California 90212, Attn: Ralph Brescia, Esq., hereby sells, grants and assigns to WARNER BROS. PICTURES, a division of WB Studio Enterprises Inc. ("Warner"), whose address is 4000 Warner Boulevard, Burbank, California 91522, in perpetuity and throughout the universe, all of Sweetpea's right, title and interest in and under the documents described in Exhibit "1" attached hereto.

The undersigned has executed this assignment effective as of the execution date below.

SWEETPEA B.V.I., LTD.

By: _____

Its: _____

Execution Date: 6/27/14

Form 205 rev. 1/20/06
Short Form Assignment Agreement

Trial Ex. 0540-0005

STATE OF CALIFORNIA, )
COUNTY OF Los Angeles )

On June 27 , 20 14 , before me, Daniel Parseghian , a
Notary Public, personally appeared Courtney Solomon .
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument, and acknowledged that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

DANIEL PARSEGHIAN
Commission # 1957566
Notary Public - California
Los Angeles County
My Comm. Expires Nov 18, 2015

Place Notary Seal Above

Signature of Notary Public

Form 205 rev. 1/20/06
Short Form Assignment Agreement

Oh Decl. p. 23

Trial Ex. 0540-0006

Exhibit "1"

## DOCUMENTS

(1)  Option Purchase Agreement between Sweetpea Entertainment Corporation ("SEC") and TSR, Inc. ("TSR") as of May 3, 1991

(2) Letter Agreement dated January 5, 1993, between SEC and TSR

(3) Assignment and Acknowledgement Agreement dated December 15, 1993, between SEC, Sweetpea (BVI) Limited ("SBVI") and TSR.

(4) License Agreement dated as of September 1, 1994, between SEC and TSR

(5) Settlement Agreement and Amendment dated March 19, 1998, between SBVI and TSR.

(6) Amendment dated as of June 8, 1998, between SBVI, TSR and Wizards of the Coast, Inc. ("Wizards")

(7) Settlement Agreement and Mutual General Release dated October 8, 1998, between SBVI, TSR and Wizards

(8) Short-form Assignment dated October 8, 1998, from TSR to SBVI

Form 205  rev. 1/20/06
Short Form Assignment Agreement

Trial Ex. 0540-0007

Tuesday, July 30, 2013 3:09:33 PM Pacific Daylight Time

**Subject:** Re: D & D
**Date:** Monday, October 29, 2012 5:43:59 PM Pacific Daylight Time
**From:** Oh, Jun
**To:** Silverman, Greg, Berg, Jon
**CC:** Connolly, Patti

FYI, I had a call with Rob Carlson and June Horton today regarding D & D and wanted to give you guys the update:

1. Hasbro CEO, Brian Goldner, is waiting to hear back from Wizards of the Coast (which is a subsidiary of Hasbro), on whether or not to officially engage in negotiations. Hasbro can unilaterally make this decision on behalf of Wizards of the Coast, but they want Wizards to be on board. I've been told that Wizards is still going through the script to see if it "fits into their brand," but that we should have an answer by mid-week.
2. If Wizards agrees to engage in a deal, the expectations are a Hasbro-like deal (i.e., $5M v. 5% 1st dollar for rights, with an additional producing deal component).
3. They are still working out the rights issues, but they have acknowledged that our deal will be subject to making sure that we have all the necessary rights.

Page 1 of 1

**CONFIDENTIAL**                              Oh Decl. p. 25   **WB000931**

**Trial Ex. 0541-0001**