**MAURA J. WOGAN** (admitted *pro hac vice*)
**JEREMY S. GOLDMAN** (admitted *pro hac vice*)
**FRANKFURT KURNIT KLEIN & SELZ, P.C.**
488 Madison Avenue, 10th Floor
New York, NY 10022
Telephone: (212) 980-0120
Facsimile: (212) 593-9175
E-Mail:  mwogan@fkks.com
         jgoldman@fkks.com

**MICHAEL E. WEINSTEN** (SBN 155680)
**LAVELY & SINGER**
**PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone: (310) 556-3501
Facsimile: (310) 556-3615
E-Mail:  mweinsten@lavelysinger.com

Attorneys for Plaintiffs HASBRO, INC.
and WIZARDS OF THE COAST LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HASBRO, INC., a Rhode Island corporation; and WIZARDS OF THE COAST LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> SWEETPEA ENTERTAINMENT, INC., a Delaware corporation; and SWEETPEA B.V.I. LTD., a British Virgin Islands corporation, <br><br> Defendants. <br><br> AND <br><br> RELATED COUNTERCLAIMS | Case No.: CV 13-03406-DMG (JCG) <br><br> [HON. DOLLY M. GEE] <br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON PARTIAL FINDINGS** <br><br> Trial Date:   September 16, 2014 |

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2         Plaintiffs Hasbro, Inc. and Wizards of the Coast, LLC (together "Hasbro") submit

3    the following memorandum of law in further opposition to Defendants' Sweetpea

4    Entertainment Inc. and Sweetpea B.V.I. LTD ("Sweetpea") oral motion and supporting

5    memorandum of law for judgment on partial findings (the "Motion").  This

6    memorandum supplements Hasbro's opposition to the Motion presented by counsel at

7    oral argument before this Court by addressing certain of Sweetpea's arguments related to

8    Hasbro's federal and common law trademark claims.

9                                **INTRODUCTION**

10        Sweetpea's Motion asserts that Hasbro must have a specific registered federal

11   trademark for use in connection with motion pictures in order to prove a claim of

12   trademark infringement.  This is not the law.  First, as will be shown below, Hasbro has

13   numerous trademark registrations for the mark DUNGEONS & DRAGONS and for

14   related marks, including registrations in International Class 41 (the class that includes

15   motion pictures).  Even if the Court were to ignore Hasbro's federally registered

16   trademarks, registration is not a prerequisite to bringing a valid claim under the Lanham

17   Act, and Sweetpea cites no authority to the contrary.  Hasbro has broad common law

18   rights in the DUNGEONS & DRAGONS mark based upon its long-standing use of that

19   mark in a broad range of categories[1].   Hasbro also has a pending application for use of

20   the mark DUNGEONS & DRAGONS in connection with motion pictures.

21        Sweetpea also claims that because it has not used the DUNGEONS & DRAGONS

22   mark in connection with a produced motion picture, it cannot be liable for trademark

23   infringement.  Sweetpea ignores the fact that its conduct, including Mr. Solomon's

24   _____

25   [1] Sweetpea inexplicably contends, without explanation or citation to authority, that
     Hasbro has abandoned the claims it asserted in its complaint and included in the final
26   pretrial conference order for false designation of origin and unfair competition arising
     under section 43(a) of the Lanham Act, 15 U.S.C. §1125.
27

28   _____

statements made directly to press outlets that focus on the target audience for potential *Dungeons & Dragons* motion pictures, negatively impact *all* of Hasbro's trademarks. And the fact that Sweetpea claims that it will not infringe Hasbro's trademarks in the future is insufficient to defeat a grant of injunctive relief, particularly given Sweetpea's long history of hiding the ball with respect to its business relationships.

Setting aside these considerable legal deficiencies, Sweetpea's Motion also fails with respect to Hasbro's trademark claims because Sweetpea, as Hasbro's long-time licensee, is estopped to challenge the validity of the trademarks it licensed.  Finally, the existence of certain language within the most recent agreement between Sweetpea and Warner Bros. Pictures does not provide any basis to refuse to grant Hasbro an order permanently enjoining Sweetpea from further infringing Hasbro's valuable trademarks.

## ARGUMENT

### A.   Hasbro is the Owner of Federally Registered Trademarks in the Mark Dungeons & Dragons

Hasbro is the owner of numerous trademark registrations and applications for the mark DUNGEONS & DRAGONS and related marks for numerous classes of goods and services, including in International Class 41.[2]  *See also* Trial Ex. 536, Joint Statement of Admitted Facts, ¶¶13-18.

These include Reg. No. 4368634,[3] registered on July 16, 2013 based on use dating back to 2008, for the mark DUNGEONS & DRAGONS in International Class 41 for

---

[2]  Given the expedited nature of both Hasbro's oral argument in opposition to the Motion and this additional written submission, Hasbro respectfully requests that this Court take judicial notice of the records of the U.S. Patent and Trademark Office reflecting Hasbro's registered trademarks that are indicated at the hyperlinks referenced below.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (noting that a court "may take judicial notice of court filings and other matters of public record").

[3]  Available at http://tess2.uspto.gov/bin/showfield?f=doc&state=4803:vhjuz1.2.1 (last visited Sept. 23, 2014)

"Providing online publications in the nature of e-books in the field of fantasy adventures"; Reg. No. 4268729,[4] registered on January 1, 2013 based on use dating back to 2010, for the mark DUNGEONS & DRAGON ENCOUNTERS in International Class 41 for "Entertainment services, namely, organizing and conducting game tournaments"; and Reg. No. 3325343,[5] registered on October 30, 2007 based on use dating back to 2006 for the mark DUNGEONS & DRAGONS ONLINE in International Class 41 for "Entertainment services, namely, providing interactive games by means of a global computer network."

In addition, Plaintiff is the owner of a pending application (Serial No. 85/583897) filed on an intent to use basis on March 29, 2012 for the mark DUNGEONS & DRAGONS in International Class 41 [6] for "Entertainment services, namely the production and distribution of motion pictures, ongoing television programs, television game shows, and animated television series . . . ."

Plaintiff also is the owner of numerous other registrations and pending applications for the mark DUNGEONS & DRAGONS in a variety of other categories all related to the same property.  For example, it owns Reg. No. 4392351,[7] registered on August 27, 2013 based upon use dating back to 2008, in International Class 9 for "Downloadable electronic publications in the nature of e-books in the field of fantasy adventures.  It also owns Reg. No. 4041888,[8] registered on August 2, 2011 based upon

---

[4]  Available at http://tess2.uspto.gov/bin/showfield?f=doc&state=4803:vhjuz1.3.1 (last visited Sept. 23, 2014)
[5]  Available at http://tess2.uspto.gov/bin/showfield?f=doc&state=4803:vhjuz1.4.1 (last visited Sept. 23, 2014)
[6]  Available at http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4805:86hwjp.7.3 (last visited Sept. 23, 2014)
[7]  Available at http://tess2.uspto.gov/bin/showfield?f=doc&state=4803:vhjuz1.5.1 (last visited Sept. 23, 2014)
[8]  Available at http://tess2.uspto.gov/bin/showfield?f=doc&state=4803:vhjuz1.6.1 (last visited Sept. 23, 2014)

use dating back to 2010, in International Class 16 for "comic books."  Other registrations include Reg. No. 3155935,[9] registered on October 17, 2006 based upon use dating back to 1992 for "fantasy adventure novels" and Reg. No. 1843735,[10] registered on July 5, 1994 in International Class 28 for "video game cartridges and video output games." Hasbro is the owner of an existing federal registration for the mark DUNGEONS & DRAGONS registered on June 6, 1978 based on use dating back to 1974 in International Class 16 for "Printed instructional booklet for the playing of fantasy war games."

Sweetpea appears to be taking the position that, because Plaintiff does not have a federal registration that explicitly includes motion pictures as one of the listed goods or services, that Hasbro is barred from asserting a claim either for infringement of a registered mark under section 32 of the Lanham Act, 15 U.S.C. §1114 or for false designation or origin, false association or unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  This position is legally untenable.

The critical test in determining whether a later use infringes upon the rights of a trademark infringement is whether consumers are likely to be confused as to the source of the goods or services in question.  *See e.g., Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385 (9th Cir. 1993).  Courts in the Ninth Circuit often apply the so-called "*Sleekcraft*" factors in considering whether confusion is likely.  *Id.* at 1391-92.  These non-exclusive factors include :  1) the strength of the mark; 2) proximity of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) type of goods and degree of care likely to be exercised by the purchaser; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of product lines. *Id.*, *citing, AMF Inc. v. Sleekcraft Boats*, 599 F.2d 34, 348-49 (9th Cir. 1979).  This test

---

[9]  Available at http://tess2.uspto.gov/bin/showfield?f=doc&state=4803:vhjuz1.7.1 (last visited Sept. 23, 2014)
[10]  Available at http://tmsearch.uspto.gov/bin/showfield?f=doc&state= 4805:86hwjp.7.16 (last visit Sept. 23, 2014)

1   is used both in cases involving infringement of registered marks under section 32 of the

2   Lanham Act, *e.g., Network Automation, Inc. Advanced Systems Concepts, Inc.,* 638 F.3d

3   1137 (9th Cir. 2011), and in cases involving claims for false designation or origin or

4   association under section 43(a) of the Lanham Act. *E.g., Fortune Dynamic, Inc. v.*

5   *Victoria's Secret Stores Brand Management, Inc.,* 618 F.3d 1035 (9th Cir. 2010).

6          Application of the *Sleekcraft* factors is not dependent upon whether the plaintiff

7   has a registration for precisely the same mark for the precise goods and services used by

8   the alleged infringer.  Rather, the test requires an analysis of all of the operative facts in

9   order to determine whether consumers will be confused about the source of the goods or

10  services.

11         Here, there can be no doubt whatsoever that consumers who learn of a new

12  motion picture offered under the name "Dungeons & Dragons" will be confused into

13  believing that that film comes from, or otherwise is associated with or sanctioned by, the

14  company that owns the rights in the various printed Dungeons &Dragons books, e-

15  books, video gaming tournaments, printed instruction booklets for fantasy war games

16  and the other goods and services offered by Hasbro.

17  **B.   Hasbro Has Strong Common-Law Trademark Claims Under the Lanham**

18       **Act**

19         Even assuming *arguendo* that Hasbro did not hold multiple registered trademarks

20  for *Dungeons & Dragons* (it does), Sweetpea's Motion cites no authority in support of

21  its argument that Hasbro must have a registered trademark in order to prevail on its

22  claims under the Lanham Act, 15 U.S.C. § 1125.  Ninth Circuit law is clear that a

23  registered trademark is not a prerequisite to bring such a claim under § 1125.  *See, e.g.,*

24  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68 (1992) (stating that the

25  Lanham Act "protects qualifying unregistered trademarks"); *Kendall-Jackson Winery,*

26  *Ltd. v. E & J Gallo Winery*, 150 F.3d 1042, 1046 n.7 (9th Cir. 1998) (stating

27  "[r]egistration is not a prerequisite for protection under [Lanham Act] § 43(a)");

28

*Protectmarriage.com v. Courage Campaign*, 689 F. Supp. 2d 1125, 1228-30 (E.D. Cal. 2010) ("While the mark is unregistered, registration is not a prerequisite to suit.").

Instead, the best Sweetpea's can do is wrongly conflate "validity" with a purported requirement of "registration."  However, while Federal registration is *prima facie* evidence of validity, it is certainly not the <u>only</u> way to establish validity.  *See, e.g.*, *Credit One Corp v. Credit One Fin., Inc.* 661 F. Supp. 2d 1134, 1137-38 (C.D. Cal. 2009) (citing *Casual Corner Associates, Inc. v. Casual Stores of Nevada, Inc.*, 493 F. 2d 709 (9th Cir. 1974) (discussing that a common-law trademark holder can establish validity by showing continuous use prior to the date of junior user's trademark registration).  There is no dispute that Hasbro owns extremely strong rights in the DUNGEONS & DRAGONS mark across a broad range of categories based upon the longstanding use of the name for the past 40 years.  Again, application of the *Sleekcraft* factors to the facts of this case establishes that consumers would be confused by Sweetpea's use of the DUNGEONS & DRAGONS mark.

**C.    Sweetpea is Estopped From Denying the Validity of Hasbro's Trademarks**

As Hasbro's long-time licensee of the *Dungeons & Dragons* trademark specifically for use in connection with motion pictures, Sweetpea is estopped from challenging the validity of Hasbro's mark.  *See, e.g. STX, Inc. v. Bauer USA, Inc.*, No. C 96-1140, 1997 WL 337578, (N.D. Cal. June 5, 1997), citing *Pacific Supply Coop v. Farmers Union Cent. Exch.*, 318 F.2d 894, 908 (9th Cir. 1963).

Licensee estoppel is based on the common-sense principle "that a licensee should not be permitted to enjoy the use of the licensed mark while at the same time challenging the mark as being invalid."  3 *McCarthy on Trademarks and Unfair Competition* § 18:63 (4th ed.).  Estoppel is particularly appropriate in this case, where Sweetpea has continued to assert that its holds the license to use the *Dungeons & Dragons* trademark and has engaged in lengthy negotiations *during this litigation* to sub-license this right to Warner Bros. Pictures.  *See* Trial Ex. 283 at 283-0005; Trial Ex. 540.

Indeed, prior to the start of trial, Sweetpea admitted that (i) Hasbro is the owner of the registered trademarks in *Dungeons & Dragons*; (ii) a "***wide variety of goods and services have been consistently identified with the D&D Trademark*** in connection with a highly successfully worldwide merchandizing program;" (iii) that Hasbro has used and continues to use the *D&D* Trademark to "***brand entertainment products and services***;" (iv) the "D&D Trademark is used in commerce, is non-functional, is distinctive, and has acquired substantial secondary meaning in the marketplace; and (v) the *D&D* Trademark is famous and distinctive within the meaning of . . . 15 U.S.C. § 1125(c).  Trial Ex. 536, Joint Statement of Admitted Facts [ECF 130] ¶¶ 13-18 (emphasis added).  In light of these admissions, Sweetpea should not be permitted to claim that it has the right to make a motion picture using the "famous and distinctive" *Dungeons & Dragons* trademark, while at the same time arguing that Hasbro does not have rights in the mark it licensed.

**D.      Sweetpea's Agreement with Warner Brothers does not Bar Hasbro's Right to Permanent Injunctive Relief**

The Motion asserts that Hasbro is not entitled to permanent injunctive relief in part because Sweetpea's agreement with Warner Bros. only purports to grant rights "subject to whatever determinations are made by this Court."  Motion at 17-18. Sweetpea's word alone is not sufficient to bar Hasbro from obtaining a permanent injunction to prevent Sweetpea from further infringing Hasbro's trademarks.

Sweetpea cannot avoid a permanent injunction based on what amounts to its mere assertion that it will not infringe Hasbro's trademarks in the future.  Indeed, courts routinely reject such attempts to evade judicial review of infringing behavior.  *Cf. Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) ("We have recognized, however, that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued . . . .  Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.).

As an initial matter, Sweetpea's agreement is with Warner Bros., not Hasbro, and so does not provide any rights or protections for Hasbro's benefit. *See* Trial Ex. 540 at 540-0001 (stating that the agreement is intended to avoid litigation between "*Purchaser*," Warner Bros. and "*Owner*," Sweetpea) (the "Sweetpea-Warner Agreement"). The Motion is silent as to how Hasbro, the owner of the trademarks in Dungeons & Dragons, is protected from further infringement by Sweetpea and/or Warner Bros by the Sweetpea-Warner Agreement. *See* Trial Ex. 536, Joint Statement of Admitted Facts [ECF 130] ¶ 13. Standing alone, this agreement is insufficient to moot Hasbro's trademark infringement claims or its need for a permanent injunction. "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that *it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Nike* at 727. (emphasis added). This is far from the case here.

Furthermore, a permanent injunction is particularly appropriate in this case because, as this Court is well aware, Sweetpea and Warner Bros. Pictures have repeatedly played "hide the ball" regarding the extent of their business relationship. At the outset of litigation, on May 2, 2013, counsel for Sweetpea responded to Hasbro's demand letter by threatening to "use all available legal avenues to hold [Hasbro] responsible" for "attempting to interfere with [Sweetpea's] contractual relations with Warner Brothers." *See* Trial Ex. 285 at 285-0002. However, as litigation progressed through discovery, Sweetpea's story changed and Mr. Solomon repeatedly asserted in his deposition that there was no enforceable agreement between Warner Bros. Pictures and Sweetpea. *See, e.g.*, Transcript of the Deposition of Courtney Solomon dated Dec. 10 and 11, 2013 at 501:18-502:10 (suggesting that the key terms of Sweetpea's agreement in principle with Warner Bros. Pictures was "not negotiated"). Thereafter in June 2014, months after Hasbro believed that it had reached an agreement in good faith with Sweetpea to settle this litigation, Sweetpea revealed that it had entered into an

1  option purchase agreement with Warner Bros. Pictures that scuttled the parties'
2  settlement.  *See* Trial Ex. 540.

3  　　　In short, Sweetpea and its on-again, off-again business partner Warner Bros.
4  Pictures have not been forthcoming about their efforts to develop and produce a motion
5  picture, likely based on the *Chainmail* script, at issue in this case.  Accordingly, it would
6  be unfair to require Hasbro to once again rely on Sweetpea's mere say-so that it will not
7  engage in any further infringement of Hasbro's copyrights or trademarks.  To the
8  contrary, Hasbro likely needs the security of an enforceable, court-ordered injunction in
9  order to be certain that Sweetpea and its production partners will cease their infringing
10  behavior.

11  **CONCLUSION**

12  　　　For the reasons set forth at oral argument before this Court by Hasbro's counsel
13  on September 22, 2014, and the foregoing memorandum of law, Hasbro respectfully
14  requests that the Court deny the Motion in its entirety.

15
16  DATED:  September 22, 2014　　　**LAVELY & SINGER, P.C.**

17
18  　　　　　　　　　　By: _____/s/ *Michael E. Weinsten*_____
　　　　　　　　　　　　　MICHAEL E. WEINSTEN
19  　　　　　　　　　　　　Attorneys for Plaintiffs Hasbro, Inc., and
　　　　　　　　　　　　　Wizards Of The Coast, LLC
20
21  　　　　　　　　　　**FRANKFURT KURNIT KLEIN & SELZ, P.C.**

22  　　　　　　　　　　By: _____/s/ *Maura J. Wogan*_____
23  　　　　　　　　　　　　　MAURA J. WOGAN
　　　　　　　　　　　　　JEREMY S. GOLDMAN
24  　　　　　　　　　　　　Attorneys for Plaintiffs Hasbro, Inc., and
25  　　　　　　　　　　　　　Wizards Of The Coast, LLC
26
27
28